United States Court of Appeals
Fifth Circuit

**F I L E D**

**March 29, 2006**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

No. 05-30054

KIRTLAND SPEAKS, D.C.,

Plaintiff-Appellant,

versus

MARK B. KRUSE, in his official capacity as a duly appointed member of the Louisiana Board of Chiropractic Examiners; GLENN D. MANCEAUX, in his official capacity as a duly appointed member of the Louisiana Board of Chiropractic Examiners; KELLY B. FAIRCLOTH, in her official capacity as a duly appointed member of the Louisiana Board of Chiropractic Examiners; PATRICK S. CLAWSON, in his official capacity as a duly appointed member of the Louisiana Board of Chiropractic Examiners; WILLIAM P. FEY, JR, in his official capacity as a duly appointed member of the Louisiana Board of Chiropractic Examiners; JOHN L. MURPHY, in his official capacity as a duly appointed member of the Louisiana Board of Chiropractic Examiners; R. BUCKLEY VANBREEMEN, in his official capacity as a duly appointed member of the Louisiana Board of Chiropractic Examiners,

Defendants-Appellees.

Appeal from the United States District Court
for the Eastern District of Louisiana

Before JOLLY, HIGGINBOTHAM, and SMITH, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Chiropractor Kirtland Speaks appeals the district court's denial of his motion for a preliminary injunction against the

enforcement of provisions of Louisiana law regulating solicitation of prospective patients. We vacate and remand with instruction to grant the requested preliminary injunction.

I

Dr. Kirtland Speaks is a chiropractor licensed by the Louisiana State Board of Chiropractic Examiners ("the Board"). Dr. Speaks is employed in Arlington, Texas but intends to relocate his practice to Kenner, Louisiana.[1] There he plans to employ telemarketers to solicit people recently involved in car accidents, using names and telephone numbers obtained from publicly available accident reports.

Dr. Speaks contends that the telemarketers will follow without deviation a prepared script containing only truthful, non-deceptive information, tape concluding summaries of all telephone conversations, record all numbers called, and call no numbers listed on national or local "do-not-call" lists.

The parties agree that the marketing plan would violate two provisions of Louisiana law. LA. ADMIN. CODE tit. 46, § 307(H) states that "[c]omputer-generated or live, unsolicited telephone canvassing to prospective new patients is prohibited." LA. REV.

---

[1] The only information we have concerning Dr. Speaks's location and intentions comes from his June 29, 2004 declaration filed in the court below. The parties at oral argument conceded that the information contained in the declaration is still valid.

STAT. ANN. § 37:1743 provides in relevant part that:

A. A health care provider [such as a chiropractor]... shall not directly solicit by phone or mail, patients or potential patients who, because of their particular circumstances, are vulnerable to undue influence. Circumstances in which patients or potential patients may be considered to be vulnerable to undue influence include but are not limited to:

(1) When a person is known to the health care provider to have recently been involved in a motor vehicle accident.

(2) When a person is known to the health care provider to have recently been involved in a work-related accident.

(3) When a person is known to the health care provider to have recently been injured by another person or as a result of another person's actions. [2]

In July of 2004, Dr. Speaks filed a complaint in federal district court in Louisiana against members of the Board in their official capacity. The complaint sought a declaratory judgment that the two restrictions violated the First Amendment, a preliminary injunction under Federal Rule of Civil Procedure 65 enjoining enforcement of the restrictions, and a permanent injunction enjoining the same. Applying the *Central Hudson*[3] test for restrictions on commercial speech, the district court granted a preliminary injunction barring enforcement of LA. ADMIN. CODE tit.

---

[2] In *Gregory v. Louisiana Board of Chiropractic Examiners*, 608 So. 2d 987, 993 (La. 1992), the Supreme Court of Louisiana struck the words "or mail" from the statute.

[3] *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 563-64 (1980).

46, § 307(H)[4] and refused to enjoin LA. REV. STAT. ANN. § 37:1743. Only Dr. Speaks appeals.

## II

The Board does not challenge standing and we pause only to insure its presence.[5] Standing to challenge the constitutionality of a penal statute or the like requires "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there [must be] a credible threat of prosecution thereunder."[6]

We are convinced that Dr. Speaks has standing to bring his claim. He formally alleges an intent to relocate and is currently licensed in Louisiana and practicing in an adjacent state. He has developed a business plan and expressed an unchallenged intent to follow it if he succeeds in this case. This is sufficient.

## III

"Although the ultimate decision whether to grant or deny a preliminary injunction is reviewed only for abuse of discretion, a decision grounded in erroneous legal principles is reviewed *de*

---

[4] The court concluded that the restriction imposed by LA. ADMIN. CODE tit. 46, § 307(H) was "too broad" to withstand the intermediate scrutiny imposed under *Central Hudson*.

[5] *S.E.C. v. Forex Asset Management LLC*, 242 F.3d 325, 328 (5th Cir. 2001) (requiring this court to *sua sponte* investigate standing).

[6] *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979).

*novo.*"[7]  Because the lower court's denial of the motion for an injunction against the enforcement of § 37:1743 turned on a mixed question of law and fact,[8] we review the denial *de novo.*

A preliminary injunction should issue if the movant establishes:

> (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest.[9]

Only the first element is at issue in this appeal because the Board does not challenge the others.

IV

Restrictions on commercial speech are analyzed under the framework of *Central Hudson.*[10]  The government may ban deceptive

---

[7] *Women's Med. Ctr. Of Nw. Houston v. Bell*, 248 F.3d 411, 419 (5th Cir. 2001).

[8] *See Baby Dolls Topless Saloons, Inc. v. City of Dallas, Tex.*, 295 F.3d 471, 479 (5th Cir. 2002) ("Whether...free speech rights have been infringed is a mixed question of law and fact [and t]he appropriate standard of review is de novo." (internal quotations omitted) (alteration in original)).

[9] *Concerned Women for Am., Inc. v. Lafayette County*, 883 F.2d 32, 34 (5th Cir. 1989).

[10] *See Central Hudson*, 447 U.S. at 563-64.  In its brief on appeal, the Board cites *Central Hudson* but then argues that the Supreme Court has stated that application of the *Central Hudson* test is functionally equivalent to application of the test for time, place, and manner restrictions.  It proceeds to perform most of its analysis under the latter framework.  As the district court correctly observed, this is incorrect, and regulations on commercial speech are analyzed under *Central Hudson.  See Fla. Bar v. Went for It, Inc.*, 515 U.S. 618, 623 (1995); *Bailey v. Morales*, 190 F.3d 320, 323 (5th Cir. 1999).

commercial speech and commercial speech related to illegal activity. "If the communication is neither misleading nor related to unlawful activity, the government's power is more circumscribed." First, "[t]he State must assert a substantial interest to be achieved by restrictions on commercial speech." Second, "the restriction must directly advance the state interest involved." Third, "if the governmental interest could be served as well by a more limited restriction on commercial speech, the excessive restrictions cannot survive."[11] The Board does not challenge Dr. Speaks's assertion that § 37:1743 is not aimed at deceptive speech or illegal activity.

The Board claims substantial state interests in protecting the privacy of its citizens and protecting citizens from healthcare providers who overreach and exert undue influence.[12] The parties spar over whether the district court should have considered the former since the statute's stated interest is only the latter. We do not decide whether the court should have considered both interests because we conclude that, even if they are both considered,[13] § 37:1743 fails the third prong of *Central Hudson*

_____

[11] *Central Hudson*, 447 U.S. at 564.

[12] The Board also claimed but abandoned below an interest in reducing unnecessary medical treatment and insurance costs.

[13] Privacy and the protection of citizens against undue influence are valid substantial state interests. *See Went for It*, 515 U.S. at 624-25; *Edenfield v. Fane*, 507 U.S. 761, 770 (1993); *Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447,

6

because they can be served as well by a more limited restriction.

Under the third prong of *Central Hudson*, the Board must show that § 37:1743 is narrowly tailored — that the means are in proportion to the interests they purport to serve.[14] Dr. Speaks suggests several alternatives to the State's chosen means of preventing undue influence, such as prohibiting false or misleading advertising during a telephone call, requiring disclosure of particular information during a call, submitting a written script and tapes of all calls to the Board, and requiring retention of names and numbers called. He points to OHIO ADMIN. CODE. § 4734:9-02 (2005), a restriction requiring much of what he suggests, as an example of a constitutionally permissible alternative. Finally, he points to the absence of a time limitation in Louisiana's statute. The Board replies that the Supreme Court upheld similar rules preventing potentially overbearing solicitation in *Ohralik v. Ohio State Bar Association*[15] and *Florida Bar v. Went for It, Inc.*[16] We turn to these cases.

*Ohralik* was a pre-*Central Hudson* case refusing to strike down

---

460 (1978); *Bailey*, 190 F.3d at 323.

[14] *See Bailey*, 190 F.3d at 324. The State need not use the least restrictive means. *Id.*

[15] 436 U.S. 447 (1978).

[16] 515 U.S. 618 (1995).

a bar of in-person solicitation by attorneys, not the less problematic telephone solicitation. More apt is *Went for It*, upholding a rule prohibiting attorneys from soliciting accident victims by targeted mail following an accident. But that rule had a thirty-day time limitation. The Board points to *Capobianco v. Summers*,[17] a recent case in which the Sixth Circuit held that a telemarketing rule similar to the one here was narrowly tailored. And again the State would ignore that it addressed a regulation of contact for a limited period. *Capobianco* explicitly distinguished an earlier unpublished decision holding a similar statute unconstitutional because it had no time limitation: "Chief among the reasons for our [prior] decision was the fact that the statute contained no time limit at all on the restriction of access to accident victims."[18] This court has followed a similar path in *Bailey v. Morales*, striking down a statute with a broader sweep than the statute here. We emphasized there the lack of a time restriction.[19]

---

[17] 377 F.3d 559 (6th Cir. 2004).

[18] *Id.* at 563. The court in *Capobianco* also stated that the imposition of criminal sanctions in the prior case weighed against the constitutionality of the rule in that case, noting that the rule in its case had no criminal sanction. But the court's focus was clearly on the time limitation, the more important of the two differences.

[19] 190 F.3d 320, 323-25 (5th Cir. 1999). The restriction in *Bailey* prohibited various professionals from soliciting in person, or by telephone or indirect methods, prospective clients or their families for employment arising out of a particular event or concerning an existing condition. *See also*

Sensing the difficulty of its position, the Board contended at oral argument that preventing solicitation of prospective clients only when they are "vulnerable to undue influence" functions as a time limitation. The argument is that it prohibits solicitation only when necessary and, theoretically, could allow solicitation sooner than a firm time limitation. We are unpersuaded. The term "vulnerable to undue influence" is undefined. The Board urges that the three subsections under § 37:1743(A) define those terms, but those subsections merely provide non-exclusive examples of situations in which a prospective client "*may* be considered to be vulnerable to undue influence." The uncertainty inherent in the statutory term "undue influence" leaves the seller of services uncertain of when he may call. It is this chilling uncertainty that supports the use of a bright line time-out period reflecting the State's judgment of when the risk of undue influence is too great.[20] The balance of interests required by the First Amendment cannot be struck by use of such an open-ended stricture that resists *ex ante* fixity.

We conclude that § 37:1743 is not narrowly tailored to the

*Innovative Database Sys. v. Morales*, 990 F.2d 217, 219 (5th Cir. 1993) (striking down a statute forbidding contacting accident victims indefinitely).

[20] *See Innovative Database Sys.*, 990 F.2d at 219 (striking down as not narrowly tailored a Texas statute preventing mail, telephone, or in-person solicitation of patients "vulnerable to an undue influence" and providing three examples of such patients).

State's interest in preventing "undue influence." It follows that § 37:1743 is not narrowly tailored to the State's interest in protecting privacy because the statute, by protecting privacy only to the extent that the person called is "vulnerable to undue influence," suffers from the same defect of uncertainty in protecting this interest.

The order denying the requested preliminary injunction is VACATED. The case is REMANDED to the district court with instruction to grant the preliminary injunction and for further proceedings consistent with this opinion. VACATED and REMANDED.