**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
April 22, 2009

Charles R. Fulbruge III
Clerk

No. 08-50231

VICKEE BYRUM; JOEL MOZERSKY; VERONICA KOLTUNIAK; NANCY PELL

Plaintiffs-Appellants

v.

GORDON E LANDRETH, in his official capacity as Chairman of the Texas Board of Architectural Examiners; ALFRED VIDAURRI, JR, in his official capacity as Vice-Chairman of the Texas Board of Architectural Examiners; ROSEMARY A GAMMON, in her official capacity as Treasurer of the Texas Board of Architectural Examiners; ROBERT KYLE GARDENER, in his official capacity as member of the Texas Board of Architectural Examiners; JANET PARNELL, in her official capacity as member of the Texas Board of Architectural Examiners; PETER L PFEIFFER, in his official capacity as member of the Texas Board of Architectural Examiners; DIANE STEINBRUECK, in her official capacity as member of the Texas Board of Architectural Examiners; PEGGY LEWENE VASSBERG, in her official capacity as member of the Texas Board of Architectural Examiners; JAMES S WALKER II, in his official capacity as member of the Texas Board of Architectural Examiners

Defendants-Appellees

Appeal from the United States District Court
for the Western District of Texas

Before JONES, Chief Judge, JOLLY, Circuit Judge, CARDONE, District Judge[*].

EDITH H. JONES, Chief Judge:

In this commercial speech case, the appellants would prevent Texas from enforcing its interior design "titling" law, which prohibits unlicensed practitioners from using the terms "interior designer" or "interior design" to describe their trade and the services they provide but does not limit who may practice interior design. The district court denied their motions for preliminary injunction and summary judgment. We have jurisdiction over the former order, 28 U.S.C. § 1292(a), but not over the latter except by exercising pendent appellate jurisdiction.

Because the district court abused its discretion by denying the preliminary injunction, we reverse for entry of relief. We decline, however, to exercise pendent appellate jurisdiction to resolve the appellants' summary judgment motion.

## I. Background

The plaintiffs are experienced and accomplished interior designers.[1] Texas law does not interfere with their professional practice, TEX. OCC. CODE §1051.604, but without being licensed, they may not advertise or represent themselves using the words "interior designer" or "interior design."[2] *See* TEX.

---

[*] United States District Judge, Western District of Texas, sitting by designation.

[1] Vickee Byrum has operated a successful interior design business for over a decade and now owns her own interior design business. Joel Mozersky has been working as an interior designer for a decade now. He was named best interior designer by Citysearch website, and his work has been referenced in national publications such as *Newsweek* and local publications such as *Austin Monthly*. Veronica Koltuniak worked in set decoration and design for television shows in Los Angeles before beginning work as an interior designer there in 1990. She moved to Austin in 2000 and now runs owns her own interior design business. Nancy Pell has worked in the interior design field for more than thirty years. In 1994, she and her husband opened their own interior design business.

[2] Texas law defines interior design as the:

OCC. CODE §1053.151; 22 TEX. ADMIN. CODE § 5.131.[3] Since 1991, Texas has required that to become licensed, a prospective interior designer must graduate from an educational program recognized and approved by the Texas Board of Architectural Examiners ("TBAE"); possess appropriate professional experience; pass an examination adopted by the TBAE; and pay the required fee. TEX. OCC. CODE § 1053.152, .154-.155; 22 TEX. ADMIN. CODE §5.31. While all of the plaintiffs have been practicing interior design for some time, none has qualified educationally to sit for the exam.

The appellants sued Texas officials, members of the TBAE, to challenge these Texas "titling" laws for infringing their First Amendment right to engage in commercial speech. The parties filed cross motions for summary judgment, and the plaintiffs requested a preliminary injunction. Based on the magistrate judge's report and recommendations, the district court denied the motion for preliminary injunction and held that neither party met their respective evidentiary burdens for summary judgment. The interior designers have appealed.

---

(A)      identification, research, or development of a creative solution to a problem relating to the function or quality of an interior environment;
(B)      performance of a service relating to an interior space, including programming, design analysis, space planning of non-load-bearing interior construction, and application of aesthetic principles, by using specialized knowledge of interior construction, building codes, equipment, materials, or furnishings; or
(C)      preparation of an interior design plan, specification, or related document about the design of a non-load-bearing interior space.

TEX. OCC. CODE §1051.001(3).

[3] Violation of the law is a class C misdemeanor. TEX. OCC. CODE §1053.351. The Texas Board of Architectural Examiners may also assess an administrative penalty not to exceed $5,000. TEX OCC. CODE §§1051.451-.452.

## II.  Standard of Review

"Although the ultimate decision whether to grant or deny a preliminary injunction is reviewed only for abuse of discretion, a decision grounded in erroneous legal principles is reviewed *de novo*."  *Women's Med. Ctr. of Nw. Houston v. Bell*, 248 F.3d 411, 419 (5th Cir. 2001).  Whether free speech rights have been infringed presents a mixed question of law and fact reviewed *de novo*, and when a preliminary injunction turns on a mixed question of law and fact, it, too, is reviewed *de novo*.  *Speaks v. Kruse*, 445 F.3d 396, 399 & n.8 (5th Cir. 2006).

## III.  Discussion

### A.    Preliminary Injunction

A preliminary injunction is an extraordinary remedy that should only issue if the movant establishes:

> (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest.

*Speaks v. Kruse*, 445 F.3d 396, 399-400 (5th Cir. 2006).  The district court found that the appellants failed to show a likelihood of success on the merits.  There appears to be no dispute over the appellants' entitlement to relief under the other criteria if their First Amendment rights were violated.  *See Elrod v. Burns*, 427 U.S. 369, 373, 96 S. Ct. 2673, 2689-90 (1976).

Regulations of commercial speech must comply with the *Central Hudson* test.  *See 44 Liquormart Inc. v. Rhode Island*, 517 U.S. 484, 500, 116 S. Ct. 1495, 1507 (Stevens, J., plurality opinion) and *id.* at 528, 116 S. Ct. at 1521 (O'Connor, J., concurring) (applying *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 563-64, 100 S. Ct. 2343, 2350 (1980)).  The first part of the test is really a threshold determination whether the speech is constitutionally

protected because it is either true or only potentially misleading. *Thompson v. Western States Med. Ctr.*, 535 U.S. 357, 367, 122 S. Ct. 1497, 1504 (2002). If the speech is protected, the regulation must satisfy the following three requirements: (1) the asserted government interest in the regulation must be substantial; (2) the regulation must directly advance the governmental interest served; and (3) the regulation may not be broader than necessary to advance that governmental interest. *Cent. Hudson*, 447 U.S. at 566, 100 S. Ct. at 2351.

In a single memorandum opinion, the district court first addressed the parties' cross-motions for summary judgment concerning the *Central Hudson* factors. The court expressly agreed with the magistrate judge that the State did not bear its summary judgment burden to prove either that the appellants' speech lacked First Amendment protection; or that the titling statute directly advances the State's interest in consumer protection. The district court adopted without discussion the magistrate judge's finding, on *Central Hudson* prong two, that prohibiting appellants' speech would directly advance the State interest, and on *Central Hudson* prong three, that the State lacked proof on the "fit" between the speech prohibition and the State's interest.

The State's failure to carry its summary judgment burden did not, however, persuade the district court to grant summary judgment to appellants or award preliminary injunctive relief. As the court perfunctorily put it:

> . . . Defendants' failure to prevail on their summary judgment motion does not indicate Plaintiffs prevail on theirs, and the conclusion Plaintiffs have succeeded on the merits is therefore premature. Accordingly, the Magistrate Judge properly recommended denying Plaintiffs' motion for preliminary injunction because they have not shown a substantial likelihood of success on the merits.

Unfortunately, the district court's reasoning is confused. A plaintiff is not required to prove its entitlement to summary judgment in order to establish "a substantial likelihood of success on the merits" for preliminary injunction

purposes. *See ICEE Distribs., Inc. v. J&J Snack Foods Corp.*, 325 F.3d 586, 596 n.34 (5th Cir. 2003) (distinguishing actual success from likelihood of success on merits). The confusion is even more pronounced because the State had the burden to prove all elements of the *Central Hudson* test. Although the plaintiffs bear the burden on the preliminary injunction factors, "[i]t is well established that the party seeking to uphold a restriction on commercial speech carries the burden of justifying it." *Edenfield v. Fane*, 507 U.S. 761, 770, 113 S. Ct. 1792, 1800 (1993) (*quoting Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 71 n.20, 103 S. Ct. 2875, 2882 n.20 (1983) (internal quotation marks omitted)). Thus, when considering the likelihood of success, the district court should have inquired whether there is a sufficient likelihood the State will ultimately fail to prove its regulation constitutional. *See Ashcroft v.* ACLU, 542 U.S. 656, 666, 124 S. Ct. 2783, 2791-92 (2004). *Cf. Speaks*, 445 F.3d at 400. Applying the proper standards, we have little difficulty in concluding that appellants are likely to succeed on their claim because the State has not shown its ability to justify the statutes' constitutionality.

The State first attempts to prove, contrary to the district court's determination, that the speech at issue is not constitutionally protected because it is both inherently and actually misleading. *See Joe Conte Toyota, Inc. v. La. Motor Vehicle Comm'n*, 24 F.3d 754, 756 (5th Cir. 1994) (citing *Peel v. Attorney Discipline Comm'n*, 496 U.S. 91, 106, 110 S. Ct. 2281, 2290 (Stevens, J., plurality opinion) and *id.* at 112, 110 S. Ct. 2293 (Marshall, J., concurring)). The State advances a circular argument that the speech inherently tends to mislead consumers. It runs: Texas created a licensing regime; therefore, unlicensed interior designers who refer to themselves as interior designers will confuse consumers who will expect them to be licensed. The descriptive terms "interior designer" and "interior design" are not, however, inherently misleading. They merely describe a person's trade or business. The terms can be employed

6

deceptively, for example if a person does not actually practice interior design, but the speech is neither actually nor inherently misleading. This argument also proves too much, as it would authorize legislatures to license speech and reduce its constitutional protection by means of the licensing alone.

The State next relies on two pieces of evidence to prove that unlicensed interior designers who use the title are engaged in misleading speech. The district court correctly rejected both proffers. The State offers a survey that asked irrelevant questions concerning the respondents' general preferences for "licensed" professionals. The survey included five substantive questions and seventeen demographic questions. The only question even arguably relevant to whether the job title "interior designer" is misleading was, "if there were two professionals offering the same service, one with a license, and one without a license, do you think that it is deceptive or misleading or both that the licensed and unlicensed person can use the exact same professional title?" Unfortunately, because no definition of the qualifications of the "licensed" professional was included, no probative value can be attached to the responses. We are also unable to attribute probative value to a legislative report, prepared three years before the statutes here at issue were passed, finding that some people are confused about what type of services interior designers provide and marshalling comments for and against licensing these occupations. Significantly, the legislative committee that authored the report made no suggestions for legislation of any kind.

Both the survey and the legislative report expose the fallacy in the State's effort to characterize certain interior designers' professional practices as misleading. There is no fixed definition of the covered occupations. Interior designers may confine their work to harmonizing color schemes and selecting furnishings for private residences; or they may design the physical layout of commercial spaces, including aesthetic, functional and safety attributes; or they

7

may furnish services on a wide spectrum between these alternatives.[4] Where no fixed definition of the services exists, there can hardly be a claim that the public is being misled about particular individuals' truthfully expressed level of expertise or services. The State has offered no evidence that the public has actually been misled about interior design services. A strong argument exists that allowing professionals to use these terms commercially is neither actually nor potentially misleading. Out of deference to the State's legislative process, however, we infer that the use of the banned terms by unlicensed interior designers is at most potentially misleading.[5] *Cf. Peel v. Attorney Reg. & Disciplinary Comm'n.*, 496 U.S. 91, 109-110, 110 S. Ct. 2281, 2291-92 (1990) (holding, in split decision, that attorney's truthful use of "certified civil trial specialist" was at least potentially misleading but that state's regulation was unconstitutional).

If the State fails to sustain any of the additional *Central Hudson* prongs, the appellants have succeeded in showing a substantial likelihood of success on the merits. Accordingly, we need address only the "critical inquiry" whether the challenged regulation of commercial speech is "no more extensive than necessary to further the State's interest." *Central Hudson*, 447 U.S. at 569-70, 100 S. Ct. at 2353. Narrow tailoring, as understood for fully protected constitutional speech, does not govern less-protected commercial speech. *Board of Trs. of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 480, 109 S. Ct. 3028, 3034-35 (1989). Instead, the Constitution requires "a fit between the legislature's ends and the means

---

[4] The State legislation, in fact, contains an all-encompassing definition of interior design, *see* note 2 *supra*, but delegated the precise nature of the licensure requirements to an administrative agency.

[5] This court has the duty to determine as a matter of law whether "the inherent character of a statement places it beyond the protection of the First Amendment." *Peel*, 496 U.S. at 108, 110 S. Ct. at 2291-92 (citing *Bose Corp. v. Consumers Union*, 466 U.S. 485, 498-511, 104 S. Ct. 1949, 1958-65 (1984)).

chosen to accomplish those ends—a fit that is not necessarily perfect, but reasonable; that represents not necessarily the single best disposition but one whose scope is in proportion to the interest served." *Id.* at 480, 109 S. Ct. at 3035 (internal citations and quotation marks omitted).

On the record before us, we assume *arguendo* that the State can demonstrate a substantial public interest in protecting consumers from engaging unqualified or shoddy designers. Still, the regulation appears too broad to "fit" the State's interest. These appellants are bona fide interior designers. Nevertheless, by allowing anyone, licensed or unlicensed, to practice interior design, the State constrains these unlicensed but competent interior designers to practice their trade without being able to use truthful concise terms to solicit business. The regulation prohibits significant truthful speech. Appellants do not propose to claim training, certification, or licenses they do not possess; they merely wish to use the words "interior designer" or "interior design" to accurately describe what they do.

In attempting to sustain the "fit" between its legislative goal and the suppression of truthful speech, the State will ultimately have to distinguish decisions from two circuits holding that similar "titling" statutes violate the First Amendment. One case addressed a Kentucky law that did not prohibit a dentist from practicing orthodontics, but forbade dentists to advertise orthodontic services. *Parker v. Ky. Bd. of Dentistry*, 818 F.2d 504, 506, 510-511 (6th Cir. 1987). In the other, the Eleventh Circuit overturned a Florida law that did not regulate the practice of psychology, but allowed only licensed psychologists to advertise using a list of terms including "psychiatric social worker" and "mental health consultant." *Abramson v. Gonzalez*, 949 F.2d 1567, 1570-71, 1576 (11th Cir. 1992).

The disjuncture between the State's ends and means is greater here than in the other two cases, while the proper "fit" is easier to achieve. One can posit

a public health rationale for "fitting" the advertisement of dental or psychology services to the licensure or training of those professionals, but it is hard to place the advertisement of interior design services on a comparable consumer safety plane.[6] However, the State could have eliminated any constitutional challenge here by not limiting use of the terms "interior design" and "interior designer" but by allowing only designers who satisfy its licensing qualifications to represent themselves as "licensed" interior designers.[7]

Because the State has not demonstrated a reasonable "fit" between its regulation and the constitutional speech at issue, we reverse and remand for entry of a preliminary injunction. *See Speaks*, 445 F.3d at 402.

## B.    Pendent Appellate Jurisdiction

The denial of the appellants' preliminary injunction motion is an appealable interlocutory order, 28 U.S.C. §1292(a)(1), but the denial of their summary judgment motion is not, *Meza v. Livingston*, 537 F.3d 364, 366 (5th

---

[6] Whether letters in the record suggesting that interior designers may have to follow building safety codes and regulations promoting access to disabled people are probative, we cannot say.

[7] Four states and the District of Columbia have a similar advertising prohibition. CONN. GEN. STAT. § 20-377l; D.C. CODE § 47-2853.103(a); FLA. STAT. § 481.223(c); 225 ILL. COMP. STAT. 310/4(a); LA. REV. STAT. ANN. § 37:3176(A)(1); OKLA. STAT. tit. 59 § 46.41. Some states only prevent unlicensed interior designers from advertising as "registered," "certified," or "licensed" interior designers. ARK. CODE ANN. § 17-35-604(c); GA. CODE ANN. § 43-4-34(b); KY. REV. STAT. ANN. § 323.402(1); ME. REV. STAT. ANN. tit. 32, § 220-B(1); MD. CODE ANN., BUS. OCC. & PROF. § 8-102; MINN. STAT. § 326.02(1); MO. REV. STAT. § 324.403; NEV. REV. STAT. § 623.360(1)(a); N.J. STAT. ANN. § 45:3-45; N.M. STAT. § 61-24C-2; N.Y. EDUC. LAW § 8301; TENN. CODE ANN. § 62-2-903(a)(1); VA. CODE ANN. § 54.1-412; WIS. STAT. § 440.961 (prohibiting untruthful use of "Wisconsin registered interior designer"). Four of these jurisdictions require a license to practice interior design. D.C. CODE § 47-2853.103(a); FLA. STAT. § 481.223(b); LA. REV. STAT. ANN. § 37:3176(A)(1); NEV. REV. STAT. § 623.360(1)(a)-(c). Definitions of "interior design" differ across jurisdictions, however, and some distinguish between interior design and interior decorating. *See, e.g.*, LA. REV. STAT. ANN. § 37:3172(2), (3) (defining "decorator services" and "interior design," respectively).

Cir. 2008).[8] The appellants request us to exercise pendent appellate jurisdiction over their denied motion for summary judgment, but we decline the invitation.

Pendent appellate jurisdiction may exist where, in the interest of judicial economy, courts have discretion to review interlocutory rulings related to independently appealable orders when the two are "inextricably intertwined." *Swint v. Chambers County Comm'n*, 514 U.S. 35, 43-44, 51, 115 S. Ct. 1203, 1208-09, 1212; *Wallace v. County of Comal*, 400 F.3d 284, 291-92 (5th Cir. 2005). Although *Swint* did not foreclose pendent appellate jurisdiction in all circumstances, the opinion emphasized that courts should not circumvent congressional intent by grafting ad hoc appellate jurisdictional rules on the statutory grant of jurisdiction. *Swint*, 514 U.S. at 46-47, 50-51, 115 S. Ct. at 1210-12. Following *Swint*, this court has held that, "[p]endant[sic] appellate jurisdiction is only proper in rare and unique circumstances where a final appealable order is 'inextricably intertwined' with an unappealable order or where review of the unappealable order is necessary to ensure meaningful review of the appealable order." *Thornton v. General Motors Corp.*, 136 F.3d 450, 453 (5th Cir. 1998); *see also Gates v. Cook*, 234 F.3d 221, 232-33 (5th Cir. 2000) (Jones, J., dissenting). None of the few cases in which this court has exercised pendent appellate jurisdiction is substantially similar or fairly analogous to the case before us.[9]

---

[8] The appellants did not request that the district court certify this interlocutory appeal to this court using 28 U.S.C. §1292(b).

[9] *See Comstock Oil & Gas Inc. v. Alabama. & Coushatta Indian Tribes*, 261 F.3d 567, 571 (5th Cir. 2001) (exercising pendent appellate jurisdiction over the plaintiff's cross appeal of an order finding the Tribe had sovereign immunity while reviewing the Tribe's appeal of a denial of the tribal council members' immunity); *Gates v. Cook*, 234 F.3d 221, 228 n.6 (5th Cir. 2000) (exercising pendent appellate jurisdiction over the denial of attorneys' motion to substitute themselves as counsel in the context of an appealable no-contact order entered against the same attorneys); *Thornton v. General Motors Corp.*, 136 F.3d 450, 454 (5th Cir. 1998) (exercising pendent appellate jurisdiction over a Rule 11 sanction for attorneys' fees while reviewing an appealable suspension from practice in front of the district court); *Morin*

The appellants' chief argument for pendent appellate jurisdiction is that we cannot consider the preliminary injunction ruling here without also considering the very same law and facts on which the district court premised its denial of summary judgment. The district court denied the motions for summary judgment because the State failed to meet its evidentiary burden to show that the terms "interior design" and "interior designer" are inherently misleading and that the titling law directly advances the State's interest in consumer protection. In addition, the district court found that neither party produced any evidence regarding whether the restriction was more extensive than necessary to protect the State's interest. Because the summary judgment ruling, like the preliminary injunction test for success on the merits, turns on the *Central Hudson* factors, appellants contend the rulings are inextricably intertwined.

To support this proposition, appellants cite three cases, all of which are distinguishable. In *Lamar Advertising of Penn, LLC v. Town of Orchard Park*, 356 F.3d 365 (2d Cir. 2004), Lamar requested both a preliminary injunction and summary judgment in its First Amendment challenge to a local ordinance restricting outdoor advertising. *Id.* at 369. The district court denied the summary judgment because of mootness and plaintiffs' lack of standing. *Id.* at 370. But instead of entering a final order, the district court denied Lamar's motion for a preliminary injunction and set a trial date. *Id.* When Lamar appealed the denial of preliminary injunction, the Second Circuit exercised

---

*v. Caire*, 77 F.3d 116, 120-21 (5th Cir. 1996) (exercising pendent appellate jurisdiction over state law claims against officials when reviewing denial of motions to dismiss asserting qualified immunity).

The appellants cite three additional cases from this court where an appellant obtained review of non-appealable interlocutory motion for summary judgment in the context of an appeal from a motion for injunction. As the appellants recognize, however, these cases predate *Swint* and provide little guidance. *Justin Indus., Inc. v. Choctaw Secs., L.P.*, 920 F.2d 262 (5th Cir. 1990); *Gould v. Control Laser Corp*, 650 F.2d 617 (5th Cir. 1981); *Madry v. Sorel*, 440 F.2d 1329 (5th Cir. 1971).

pendent appellate jurisdiction over the summary judgment motion because "the district court denied Lamar's request for a preliminary injunction for the very *same reasons* it denied Lamar's motion for summary judgment . . . ." *Id.* at 372 (emphasis added). *Lamar* is distinguishable from this case for the reason articulated by the State: the appellate court was required to invoke pendent appellate jurisdiction to correct the error of law—denial of plaintiff's standing—that had become the basis for the denial of preliminary injunction. In this case, we have reviewed the injunctive order without reaching a dispositive ruling on the First Amendment claim.

The same reasoning disposes of the other cases cited by appellants. *See Law v. NCAA*, 134 F.3d 1010, 1015-16 (10th Cir. 1998) (the court reviewed the summary judgment order that served as the legal basis for granting the permanent injunction.); *Dare v. California*, 191 F.3d 1167, 1170 (9th Cir. 1999), (appellate jurisdiction existed because partial "summary judgment order provides legal authority for the injunction . . . ."). Moreover, in both cases, the summary judgment was subsumed in a permanent injunction ruling.

More pointedly, appellants rely on two cases that employ what might be called a "readily apparent" pendent appellate jurisdiction standard. In both *Amandola v. Town of Babylon*, 251 F.3d 339 (2d Cir. 2001), and *Hurwitz v. Directors Guild of America, Inc.*, 364 F.2d 67 (2d Cir. 1966), the court reviewed district court rulings denying a motion for preliminary injunction and also denying a motion for summary judgment. In *Hurwitz*, the court held that the membership oath denying Communist Party membership and support required by the Director's Guild of America was "per se an unreasonable and unlawful requirement for union membership." 364 F.2d at 69. The court then explained it was exercising jurisdiction for "the obvious interest of economy of litigation." *Id. Amandola,* citing *Hurwitz,* employs similar reasoning. There, a religious group was denied access to what the group claimed was a limited public forum.

*Amandola*, 251 F.3d at 342-43. The district court denied the group's motion for preliminary injunction finding no irreparable harm. The Second Circuit reversed, but rather than "address any tension" in its cases regarding irreparable harm and the First Amendment, the court decided the case on the merits. *Id.* at 343. Citing *Hurwitz*, it ruled that jurisdiction was appropriate because the First Amendment issue had been fully briefed and argued, and the invalidity of the provision was "readily apparent." *Id.*

The appellants advance a similar argument here. While we are sympathetic that on remand, the State's attempt to justify this speech infringement may readily fail, *Central Hudson* offers the possibility that the State can bolster its case with additional evidence. *But see Pagan v. Village of Glendale*, 559 F.3d 477, 479 (6th Cir. 2009) (holding a local commercial speech ordinance unconstitutional because the state did not produce any additional evidence on remand). Although the State moved for summary judgment in the trial court, it never waived its right to a trial. Our approval of a preliminary injunction signals the difficulty of the State's legal position, but it does not entirely foreclose the State from possible eventual success.

## IV. Conclusion

For the foregoing reasons the judgment of the district court denying the request for a preliminary injunction is VACATED. We REMAND to the district court to preliminarily enjoin the enforcement of above-cited Texas laws prohibiting unlicensed interior designers from using the terms "interior design" and "interior designer" to represent themselves and their businesses and for further proceedings consistent with this opinion.

**VACATED and REMANDED.**