# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
July 11, 2013

Lyle W. Cayce
Clerk

No. 12-30961

JOHN GRAY MANN, As Natural Tutor of his minor child John Andrew Mann,

Plaintiff - Appellee

v.

LOUISIANA HIGH SCHOOL ATHLETIC ASSOCIATION, Incorporated,

Defendant - Appellant

---

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:12-CV-264

---

Before HIGGINBOTHAM, OWEN, and GRAVES, Circuit Judges.

PER CURIAM:[*]

The Louisiana High School Athletic Association ("LHSAA") appeals the district court's entry of a preliminary injunction enjoining LHSAA from treating a student as ineligible for athletics after the student transferred to a new school, and further enjoining LHSAA from imposing any penalties against the student or his new school in the event the injunction is reversed or vacated. The district court determined that the plaintiff was likely to succeed on his

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-30961

claim that imposing an ineligibility period against the student, who asserted that he transferred schools due to a disability, violated the Americans with Disabilities Act ("ADA"). We reverse the grant of the preliminary injunction.

## I. Factual and Procedural Background

A.M. is a high school student in Baton Rouge, Louisiana. LHSAA is a nonprofit voluntary membership corporation whose members consist of both public and private schools in the state. LHSAA coordinates and regulates high school interscholastic athletics at all of its member schools, including by issuing and enforcing eligibility rules for student athletes.

A.M. was enrolled at Episcopal High School until September 2011, when he was beginning his sophomore year. In the spring of 2011, A.M.'s grades fell, and his parents had him evaluated by Dr. Candy Lawson, a psychologist who determined that A.M. suffered from an anxiety disorder that was negatively interfering with his performance at school. Dr. Lawson made detailed recommendations concerning academic accommodations that might assist A.M. In the fall of 2011, A.M. transferred to the Dunham School. At Dunham, A.M. receives individualized instruction and other academic accommodations tailored to his specific needs, some of which were unavailable at Episcopal. Both Episcopal and Dunham are private Christian schools. Both are members of LHSAA.

Because A.M. transferred from one school to another within the same residence zone, he became subject to LHSAA's "transfer rule," which renders a student who transfers schools within a residence zone ineligible for athletics for one year from the date of transfer. The transfer rule exists to prevent recruiting of high school athletes and to discourage transfers on the basis of athletics. A.M. filed for an exemption from the transfer rule with the LHSAA. It was denied. John Mann, on behalf of his son, then brought suit in state court.

2

No. 12-30961

After a motion for a temporary restraining order in the state suit was denied, Mann dismissed that suit without prejudice. A.M. then sat out six games of the 2011 football season because he was ineligible under the transfer rule.

On May 2, 2012, before the beginning of the 2012 football season, Mann, on behalf of A.M., filed a complaint in the Middle District of Louisiana alleging violations of the ADA and requesting declaratory and injunctive relief prohibiting LHSAA from continuing to treat A.M. as ineligible to participate in athletics under its transfer rule. Mann filed a motion for a preliminary injunction seeking to enjoin LHSAA from imposing on A.M. the additional time remaining in the ineligibility period, which made up the first four games of the season that began in the fall of 2012. Mann contended that A.M.'s transfer was due to a disability, because the Dunham School provides academic services and accommodations more tailored to the learning needs that result from his anxiety disorder than Episcopal, and that imposing the transfer rule in this situation violated the ADA.

The other LHSAA rule at issue in this case is the "restitution rule." LHSAA Rule 5.7.2 states:

> If a student is ineligible according to LHSAA rules but is permitted to participate in interscholastic competition contrary to such LHSAA rules but in accordance with the terms of a court order of any kind including but not limited to a declaratory judgment, temporary restraining order, preliminary injunction, or permanent injunction, against his/her school and/or the LHSAA and said court order is subsequently voluntarily vacated, stayed, reversed or [it is] finally determined by the court that the court order including any injunctive relief is not or was not justified, any one or more of the following actions shall be taken against such school in the interest of restitution and fairness to the competing schools:
>
> 1.    Require that individual or team records and performance achieved during participation by such ineligible student shall be vacated or stricken.

3

> 2.     Require that team victories shall be forfeited to the opponent.
>
> 3.     Require that team or individual awards earned by such ineligible student be returned to the Association.

In his motion for a preliminary injunction, Mann also sought an order prohibiting LHSAA from imposing the restitution rule against A.M. or Dunham if an injunction regarding A.M.'s eligibility was granted and then later vacated or reversed.

On August 20, 2012, after an evidentiary hearing, the district court granted the preliminary injunction, which enjoined LHSAA from: (1) treating A.M. as ineligible to participate in any interscholastic athletics at Dunham for which he is otherwise eligible, and; (2) imposing sanctions under the restitution rule against A.M. or Dunham in the event the injunction is later reversed or vacated or if LHSAA prevails on the merits. LHSAA unsuccessfully sought a stay of the ruling. A.M. then participated in the 2012 football season under the terms of the injunction. LHSAA here appeals the grant of the preliminary injunction.

## II. Discussion

### A. *Jurisdiction and Mootness*

We have appellate jurisdiction to review the issuance of a preliminary injunction pursuant to 28 U.S.C. § 1292(a)(1). LHSAA purports to raise a challenge to subject matter jurisdiction by its arguments that it is not subject to the ADA and that A.M. is not disabled within the meaning of the ADA, and thus that the district court did not have federal question jurisdiction. Here, the ADA "both conveys jurisdiction and creates a cause of action." *See Clark v. Tarrant Cnty., Tex.*, 798 F.2d 736, 742 (5th Cir. 1986) (discussing Title VII of the Civil Rights Act of 1964). The question of whether the ADA applies to convey federal jurisdiction is intertwined with the merits; thus, we find

jurisdiction and "deal with the defendant's challenge as an attack on the merits." *Id.*

Mann contends that this appeal is moot. "A case is moot if the issues presented are no longer live." *AT&T Commc'ns of Sw., Inc. v. City of Austin*, 235 F.3d 241, 243 (5th Cir. 2000) (internal quotation marks omitted). "[A]n appeal should . . . be dismissed as moot when, by virtue of an intervening event, a court of appeals cannot grant any effectual relief whatever in favor of the appellant." *Calderon v. Moore*, 518 U.S. 149, 150 (1996) (internal quotation marks omitted). However, "even the availability of a partial remedy is sufficient to prevent a case from being moot." *Id.* (internal quotation marks and alterations omitted).

Mann argues that LHSAA's transfer rule provides for a period of ineligibility for one calendar year from the date of the student's transfer, and since that time period has now passed, there is no remaining dispute about A.M.'s eligibility. LHSAA counters by pointing out that A.M. has not graduated and will participate in his final football season in the fall of 2013. LHSAA contends that if the injunction is reversed, A.M. will be subject to the remaining ineligibility period that would have applied if the injunction had not issued, and will be ineligible for the first four games of the upcoming football season. Thus, A.M.'s continuing eligibility is still a live issue and this court retains the power to issue at least a partial remedy to LHSAA. Further, the parties continue to dispute the applicability and validity of the restitution rule in this case, which also renders this dispute live. *See, e.g., McPherson v. Mich. High Sch. Athletic Ass'n, Inc.*, 119 F.3d 453, 458-59 (6th Cir. 1997) (holding that eligibility dispute was not moot even when student had graduated where a similar restitution rule remained at issue); *Pottgen v. Mo. State High Sch. Activities Ass'n*, 40 F.3d 926, 928 (8th Cir. 1994) (same). Because the question of A.M's eligibility for four

football games and the injunction against LHSAA applying the restitution rule in this case are still at issue, this appeal is not moot.

B.      *The Preliminary Injunction*

We now turn to the district court's grant of the preliminary injunction. A plaintiff must establish four elements in order for a preliminary injunction to issue:

> (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest.

*Janvey v. Alguire*, 647 F.3d 585, 595 (5th Cir. 2011) (quoting *Byrum v. Landreth*, 566 F.3d 442, 445 (5th Cir. 2009)).  The district court found that each element of this test was satisfied.  We review the ultimate decision to grant or deny a preliminary injunction for abuse of discretion.  *Id.* at 591-92.  As to each element of the preliminary injunction analysis, we review findings of fact for clear error and review questions of law *de novo*.  *Id.* at 592.  Mixed questions of law and fact are reviewed *de novo. Byrum,* 566 F.3d at 445.

The first element of the preliminary injunction analysis that Mann must establish is a substantial likelihood of success on the merits of A.M.'s ADA claim.  The parties dispute several elements of this claim.  LHSAA asserts that it is not a public entity subject to Title II of the ADA, that A.M. is not disabled within the meaning of the ADA, and that even if A.M. is disabled, his transfer was not because of his disability.  We assume *arguendo* that LHSAA is a public entity subject to the ADA.  *See Rhodes v. Ohio High School Athletic Ass'n,* 939 F. Supp 584, 590-91 (N.D. Ohio 1996) ("[T]his court notes that every available district court opinion which has addressed this very issue has found that a state athletic association is an instrumentality of the State."); *see also La. High Sch.*

No. 12-30961

*Athletic Ass'n v. St. Augustine High Sch.*, 396 F.2d 224, 227 (5th Cir. 1968) ("There can be no substantial doubt that conduct of the affairs of LHSAA is state action in the constitutional sense."). The primary question we confront in this appeal is whether to sustain the district court's determination that Mann is substantially likely to succeed in proving that A.M. is disabled within the meaning of the ADA. We review this as a mixed question of law and fact and reverse the district court's conclusion.

To establish that A.M. is disabled under the ADA, Mann must show that A.M. has "a physical or mental impairment that substantially limits one or more major life activities . . . ." 42 U.S.C. § 12102(1)(A); *see Hale v. King*, 642 F.3d 492, 500 (5th Cir. 2011). "Major life activities" are "those activities that are of central importance to daily life." *Hale*, 642 F.3d at 500 (quoting *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 197 (2002)). The statute provides a non-exclusive list of "major life activities," which include "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). Although the ADA Amendments Act of 2008 lowered the standard that plaintiffs must meet to show that they are disabled, *see* ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553 (codified as amended in scattered

sections of 42 U.S.C.),[1] a plaintiff must still show substantial limitation, 42 U.S.C. § 12102(1)(A).

In response to LHSAA's contention that Mann did not meet his burden to show that A.M. is substantially limited in any major life activities, Mann's appellate briefing makes no argument that A.M.'s disorder qualifies as a disability within the framework of the ADA. Mann instead argues that A.M. is disabled with reference to the definition of "child with a disability" contained in the Individuals with Disabilities Education Act ("IDEA"). The IDEA is a federal law that governs special education and related services in public schools for students with disabilities, and is not at issue in this case. *See generally Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cnty. v. Rowley*, 458 U.S. 176, 179-81 (1982) (describing the IDEA). While Mann is correct that the standards of required accommodation in the ADA and IDEA may overlap where both are applicable, the scope of the statutes and their respective definitions of "disability" are different. The IDEA applies to all students "with intellectual disabilities, hearing impairments (including deafness), speech or language

---

[1] Prior to the ADA Amendments Act of 2008, "substantially limits" had been interpreted by the Supreme Court to mean "prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives." *Toyota Motor Mfg.*, 534 U.S. at 198. Further, ADA implementing regulations issued by the EEOC provided that "substantially limits" means "[s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity." *Milton v. Tex. Dep't of Criminal Justice*, 707 F.3d 570, 573 (5th Cir. 2013) (quoting *EEOC v. Agro Distribution, LLC*, 555 F.3d 462, 469 (5th Cir.2009)); 29 C.F.R. § 1630.2(j)(1)(ii) (2008). The ADA Amendments Act of 2008 expressly stated that both the "severely restricts" and the "significantly restricts" standards of defining substantial limitation were too stringent, and that "the definition of disability in this Act shall be construed in favor of broad coverage of individuals under this Act." ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat 3553 (codified at 42 U.S.C. § 12102(4)(A)). Because the amendments were not retroactive, most recent Fifth Circuit cases have involved conduct occurring prior to the effective date of the amendments and have applied the pre-amendment standards, *see, e.g., Milton,* 707 F.3d at 573 n.2; *Griffin v. United Parcel Serv., Inc.*, 661 F.3d 216, 222 (5th Cir. 2011); *Carmona v. Sw. Airlines Co.*, 604 F.3d 848, 857 (5th Cir. 2010); *Kemp v. Holder,* 610 F.3d 231, 236 (5th Cir. 2010). This case arose after the effective date of the ADA amendments and is therefore governed by the amended statute.

impairments, visual impairments (including blindness), serious emotional disturbance . . . orthopedic impairments, autism, traumatic brain injury, other health impairments, or specific learning disabilities . . . who, by reason thereof, need[ ] special education and related services." 20 U.S.C. § 1401(3). In short, the IDEA provides that special education services must be provided to those public school students who, by reason of an impairment or learning disability, need special education services. The ADA, in turn, "forbids discrimination against disabled individuals in major areas of public life," *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 675 (2001), including employment, 42 U.S.C. §§ 12111-12117, public services, *id.* §§ 12131-12165, and public accommodations, *id.* §§ 12181-12189; *see also Ellenberg v. New Mexico Military Inst.*, 572 F.3d 815, 822 (10th Cir. 2009) (distinguishing the Rehabilitation Act—a federal statute prohibiting disability discrimination—and the IDEA). The ADA definition of disability is more stringent because it requires a plaintiff to prove that his or her impairment substantially limits a major life activity, which is an inquiry entirely absent from the IDEA definition. *See Ellenberg,* 572 F.3d at 821 (noting that a disabled child under the IDEA is not required to show that he is substantially limited in the major life activity of learning). "Of course an IDEA disability may—and in the majority of cases probably will—substantially limit a major life activity. But the point here is that it need not, and thus a plaintiff must individually show substantial limitation." *Id.*

In finding that Mann was likely to prevail on his claim that A.M. falls within the ADA definition of disability, the district court's order relies solely on a report from Dr. Lawson, which diagnosed A.M. with anxiety disorder. Dr. Lawson's report describes her evaluation of A.M. at length, notes some deficiencies in his academic functioning, and makes detailed recommendations regarding academic accommodations that may benefit A.M. In a subsequent

letter prepared at the request of Mann in support of A.M.'s transfer to Dunham, Dr. Lawson states in a conclusory manner that "Additionally, diagnosis of a mental disorder, such as anxiety, means that [A.M.] meets the criteria for a disability under the Americans with Disabilities Act, as the disorder substantially limits his life activities, specifically in terms of learning, concentrating, thinking, and working." The district court in this case relied on Dr. Lawson's opinion that A.M. is disabled. It did so without further analysis regarding the ADA or A.M.'s condition. However, Dr. Lawson's diagnosis of A.M.'s anxiety disorder is insufficient, standing alone, to support a finding that Mann is likely to succeed in proving that A.M. is disabled under the ADA. "Merely having an impairment does not make one disabled for purposes of the ADA. Claimants also need to demonstrate that the impairment limits a major life activity." *Toyota Motor Mfg.*, 534 U.S. at 195, *abrogated on other grounds by* ADA Amendments Act of 2008, Pub. L. 110-325, 122 Stat. 3553; *see* 42 U.S.C. § 12102(1), (2). Though learning, concentrating, and thinking are major life activities under the ADA, *see* 42 U.S.C. § 12102(2)(A), neither the district court nor Mann connect the findings and recommendations that Dr. Lawson made in her report to the legal test for a disability under the ADA, or otherwise articulate or describe any particular way that A.M. is substantially limited in any of these major life activities due to his anxiety disorder. Based on Dr. Lawson's report, Mann may have a persuasive argument that A.M. is a "child with a disability" and would be entitled to special education in a school subject to the IDEA, but his arguments and evidence fail to address whether A.M. is substantially limited in any major life activities. The definitions in the IDEA and ADA "may substantially overlap, but we decline to conflate them entirely." *Ellenberg*, 572 F.3d at 822.

No. 12-30961

Accordingly, we reverse the district court's finding that Mann has shown that he is substantially likely to prevail on the merits of his claim that A.M. is disabled under the ADA. Of course, we do not hold that anxiety disorders can never be a disability under the ADA, and it could still be possible for Mann to prove that A.M. is disabled at trial on a fuller record. We conclude only that on the record before us, Mann did not meet his burden to show that he is substantially likely to succeed on the merits of A.M.'s ADA claim. We therefore reverse the grant of the preliminary injunction.[2]

Lastly, the parties dispute the validity of the portion of the district court's order that enjoined LHSAA from imposing its restitution rule against A.M. or Dunham in the event the injunction is reversed or vacated. Though at times professing to contest the general validity of the restitution rule, Mann did not brief any specific challenge to the restitution rule beyond stating that it is retaliatory because it allows penalties to be imposed against a student or school who challenges an eligibility decision of the LHSAA in court. On the facts of this case, in the procedural posture in which it comes to us, the restitution rule—which has not yet been applied to any party—is an attempt to restore the situation to what it would have been absent the injunction, which we have determined was erroneously issued. We therefore reverse and vacate the injunction in full.

## III. Conclusion

We REVERSE and VACATE the preliminary injunction, and REMAND for further proceedings consistent with this opinion.

---

[2] Because we find that Mann did not meet his burden on the first prong of the preliminary injunction analysis, see *Janvey*, 647 F.3d at 595, we do not reach the other elements of the preliminary injunction analysis.