# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-70014

United States Court of Appeals
Fifth Circuit

**FILED**

April 2, 2014

Lyle W. Cayce
Clerk

TOMMY LYNN SELLS; RAMIRO HERNANDEZ

Plaintiffs - Appellees

v.

BRAD LIVINGSTON, Executive Director, Texas Department of Criminal
Justice, WILLIAM STEPHENS, Director, Correctional Institutions Division,
Texas Department of Criminal Justice, JAMES JONES, Senior Warden,
Huntsville Unit, Huntsville, Texas, and UNKNOWN EXECUTIONERS

Defendants - Appellants

Appeal from the United States District Court
For the Southern District of Texas
USDC No. 4:14-CV-832

Before JOLLY, DAVIS, and PRADO, Circuit Judges.

PER CURIAM:*

The Defendants, appeal from the grant of a temporary injunction and a
stay of the execution of Plaintiff, Tommy Lynn Sells, set for Thursday, April 3,

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH
CIR. R. 47.5.4.

No. 14-70014

2014.[1] The State has also moved to vacate the stay. We grant the motion and reverse the district court's order.

## I.

Sells was convicted and sentenced to death for the December 31, 1999 capital murder of Kaylene Harris. The evidence at trial established that Sells secretly entered the trailer home of Terry Harris, an acquaintance of Sells, during the early morning hours of December 31, 1999. Armed with a butcher knife, Sells explored the residence. After looking in various rooms, he went into a bedroom where two young girls were sleeping on bunk beds. Sells sexually assaulted thirteen-year-old Kaylene Harris, blocked her way and stabbed her when she tried to escape, then cut her throat and left her to die. Sells then went over to Kaylene's eleven-year-old companion, Krystal Surles, who was still on the top bunk bed, and cut her throat. Krystal survived but was unable to speak because her vocal cords had been nearly severed. She later supplied a description of the man who had attacked her, and Sells was subsequently identified and arrested. Sells has previously appealed the conviction and sentence that brought him to this fast-approaching April 3rd execution date, and unsuccessfully sought relief in both state and federal courts.

On April 1, 2014, Sells filed a § 1983 complaint in the district court and additionally moved for a TRO and preliminary injunction and stay of his impending execution. On April 2, 2014, the district court granted the motions.

## II.

We review a preliminary injunction for abuse of discretion. *See Janvey v. Alguire*, 647 F.3d 585, 591–92 (5th Cir. 2011). "Despite this deferential standard, 'a decision grounded in erroneous legal principles is reviewed de novo.'"

---

[1] This opinion addresses only Sells's appeal. Hernandez's appeal will be resolved by another panel at a later date.

No. 14-70014

*Id.* at 592 (quoting *Byrum v. Landreth*, 566 F.3d 442, 445 (5th Cir. 2009). "As to each element of the district court's preliminary-injunction analysis, the district court's findings of fact are subject to a clearly-erroneous standard of review, while conclusions of law are subject to broad review and will be reversed if incorrect." *Id.* (internal quotation marks omitted).

To be entitled to a preliminary injunction or a stay of execution a movant must show "a substantial likelihood of success on the merits" and that the balance of harms tips in his favor. *See Tamayo v. Stephens*, No. 14-70003, 2014 WL 241744, at *3 (5th Cir. Jan. 22, 2014) (citing *Adams v. Thaler,* 679 F.3d 312, 318 (5th Cir. 2012)(stay of execution), and *Janvey v.* Alguire, 647 F.3d 585, 595 (5th Cir. 2011)(preliminary injunction)). When the requested relief is the "extraordinary remedy" of preliminary injunction, a movant must establish:

> (1) a substantial likelihood of success on the merits,
> (2) a substantial threat of irreparable injury if the injunction is not issued,
> (3) that the threated injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and
> (4) that the grant of an injunction will not disserve the public interest.

*Sepulvado v. Jindal,* 729 F.3d 413, 417 (5th Cir. 2013)(quoting *Byrum,* 566 F.3d at 445 (quoting *Speaks v. Kruse*, 445 F.3d 396, 399-400 (5th Cir. 2006)), *r'hrg. Denied*, 739 F.3d 716 (Dec. 23, 2013), *pet. for cert. filed* (Jan. 27, 2014)(No. 13-892). Similarly, when the requested relief is a stay of execution, a court must consider:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceed; and (4) where the public interest lies.

No. 14-70014

*Nken v. Holder*, 556 U.S. 418, 434 (2009)(quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987).

Sells complains that he has not been provided with sufficient information about the pentobarbital the state will use in carrying out his execution. He seeks the source of the pentobarbital, documentation reflecting the purchase of the drug, the timing and means of storage of the drug, the date of manufacture/mixing of the drug, any lot numbers which may exist, the raw ingredients used to make the drug and the source of same, the testing that was conducted on the drug and the results of that testing, and the laboratory and names of its personnel which conducted the testing.

The state, however, has provided the following information. The execution will be carried out consistent with the Texas Department of Criminal Justice's Execution Procedure established on July 9, 2012, and implemented in the seven most recent executions. Under this procedure, the TDCJ will administer a five-gram dose of pentobarbital obtained from a licensed compounding pharmacy within the United States. The batch from which the dose will be taken has been tested by an independent laboratory. That test revealed that it has a potency of 108%, and is free of contaminants.

The Eighth Amendment prohibits "wanton exposure to 'objectively intolerable risk,' not simply the possibility of pain." *Baze v. Rees*, 553 U.S. 35, 61–62 (2008) (quoting *Farmer v. Brennan*, 511 U.S. 825, 846, and n.9 (1994)). In *Baze v. Rees*, the Court stated: "A stay of execution may not be granted on [Eighth Amendment grounds] unless the condemned prisoner establishes that the state's lethal injection protocol creates a demonstrated risk of severe pain. He must show that the risk is substantial when compared to the known and available alternatives." *Id.* at 61.

If the State here were using a drug never before used or unheard of, whose efficiency or science was completely unknown, the case might be

4

different.  Plaintiff argues that because the State has transitioned to a new source for the compounded pentobarbital, there are unknowns because of the possibility of improper compounding or contamination.  But plaintiff cannot rely on speculation alone.[2] Plaintiffs must point to facts or evidence based on science and fact showing the likelihood of severe pain.  *See Whitaker v. Livingston*, 732 F.3d 465 (5th Cir. 2013).

Sells is scheduled to be executed in accordance with the TDCJ July 9, 2012 execution procedure which is well-known to petitioner and his counsel. The drug has been used across the nation and in thirty executions in Texas alone. In *Thorsen v. Epps*, 701 F.3d 444, 447 (5th Cir. 2012) this court decided that Texas' single drug protocol is acceptable under *Baze*.

We read *Whitaker*,[3] relied on by the district court, as holding no more than petitioner had failed to show a likelihood of success that his 14th and 8th Amendment rights would be violated. The case did not purport to impose and define baseline disclosure requirements for the drug if the state obtained a supply from a new compounder.

---

[2] *See Hill v. McDonough*, 547 U.S. 573, 585 (2006) (Noting that "[f]ederal courts can and should protect States from dilatory or speculative suits, . . . .").

[3] In *Whitaker v. Livingston*, 732 F.3d 465, 468-69 (5th Cir. 2013) (per curiam), this court was provided with expert reports very similar to those provided in the present case. As in this case, the expert reports in *Whitaker* also addressed a risk of increased pain allegedly associated with compounded pentobarbital. As in this case, the expert reports in *Whitaker* also attributed this risk of increased pain to the potential for impurities, contamination, lack of potency, excess of potency, and improper acidity. Both sets of expert reports suggest that these risks are present because "compounding pharmacies are not subject to stringent FDA regulations" and "the active ingredients are obtained from a global grey market." In *Whitaker*, however, we concluded that this evidence was insufficient to support the grant of a preliminary injunction to stay an execution. "Even if plaintiffs' hypothetical situations were to come to pass, they would merely demonstrate a risk of severe pain, not that that risk was substantial when compared to known and available alternatives. . . . Plaintiffs have not shown that the risk of such contamination is substantially greater than from a customary pharmacy or from any other source that the state could use for its drugs, as required by *Baze*." *Whitaker*, 732 F.3d at 468-69.

No. 14-70014

This court's decision in *Sepulvado v. Jindal*, 729 F.3d 413 (5th Cir. 2013), controls this case. In that case, the plaintiff argued that the state must disclose its protocol for the pentobarbital and the use of that drug before it can satisfy his due process rights. We stated: "There is no violation of the Due Process Clause from the uncertainty that Louisiana has imposed on Sepulvado by withholding the details of its execution protocol. Perhaps the state's secrecy masks 'a substantial risk of serious harm,' but it does not create one. Having failed to identify an enforceable right that a preliminary injunction might safeguard, Sepulvado cannot prevail on the merits."

In sum, plaintiffs are speculating that the newly acquired pentobarbital being supplied by a new compounder may be different and may cause a risk of severe pain. Speculation is not enough. Plaintiffs have failed to demonstrate a likelihood of success on the merits.

We therefore grant the motion to vacate the stay. We also reverse the preliminary injunction.

REVERSED.

MOTION GRANTED.