# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

March 8, 2016

Lyle W. Cayce
Clerk

No. 15-40446

EMERALD CITY MANAGEMENT, L.L.C.; EMERALD CITY BAND, INC.,

Plaintiffs–Appellees,

v.

JORDAN KAHN; JORDAN KAHN MUSIC COMPANY, L.L.C.,

Defendants–Appellants.

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 4:14-CV-358

Before DENNIS, ELROD, and GRAVES, Circuit Judges.

PER CURIAM:[*]

In this dispute about the use of the name "Downtown Fever" for a party band in Texas, Appellants Jordan Kahn and Jordan Kahn Music Company, L.L.C., (collectively, "Kahn") appeal the district court's order issuing a preliminary injunction ordering them to transfer control of a Facebook account to Plaintiffs Emerald City Management, L.L.C., and Emerald City Band, Inc. (collectively, "Emerald City"). Because the requirements for a preliminary injunction were not satisfied here, we VACATE the preliminary injunction.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 15-40446

## I.

Plaintiffs Emerald City, which operate party bands in the Dallas, Texas area, are owned by Dean Taglioli. Defendant Jordan Kahn is a musician from Plano, Texas, and the owner of Defendant Jordan Kahn Music Company, L.L.C. While in high school, Jordan allegedly met Taglioli and played with an Emerald City party band called the Emerald City Band in 2004 and 2005. In 2006, while Jordan was in college at Berklee College of Music in Boston, Massachusetts, Jordan formed a party band he named Downtown Fever. The band grew in popularity, playing in various northeast states as well as in Nashville and New Orleans. Taglioli allegedly took notice of the band's success and contacted Jordan in an effort to recruit him to move to Dallas and work for Emerald City as a bandleader for a new band managed by Emerald City, which was ultimately also given the name Downtown Fever.[1] Jordan eventually agreed to move to Dallas and work for Emerald City in 2009. In Dallas, Jordan auditioned and hired new musicians for the new Downtown Fever band. Jordan worked as the bandleader of the Downtown Fever band and also worked for Emerald City as the Director of Operations, overseeing Emerald City's other bands. Allegedly unbeknownst to Jordan, Emerald City obtained a trademark registration for the mark "Downtown Fever" from the State of Texas in 2011.[2]

---

[1] It is disputed whether Taglioli offered Jordan mere employment or a partnership interest in Emerald City. Taglioli asserts that Jordan agreed to be an employee, while Kahn asserts that Taglioli agreed to a partnership deal. Kahn asserts that Jordan resigned from Emerald City in 2014 because of Taglioli's continued refusal to memorialize the partnership deal.

[2] Emerald City asserts that Jordan agreed to allow Emerald City to own the Downtown Fever mark when Jordan agreed to move to Dallas and work for Emerald City. Kahn denies this allegation and asserts that Jordan at all times owned the Downtown Fever mark and gave Emerald City only a license to use the mark while he worked for them.

No. 15-40446

In 2014, Jordan resigned from Emerald City. Soon thereafter, Emerald City filed suit against Kahn for claims of state and federal trademark infringement and other business torts. Emerald City asserts, among other things, that Kahn is infringing on Emerald City's "Downtown Fever" mark. Emerald City sought a preliminary injunction and temporary restraining order to prevent Kahn from operating under the Downtown Fever mark, recover alleged Emerald City data from Kahn, and gain access to the Downtown Fever website and social media accounts. The district court granted injunctive relief but did not order, among other things, that Kahn turn over control of the Downtown Fever Facebook account.

After the order granting injunctive relief issued, Jordan voluntarily inactivated the Downtown Fever Facebook account such that no one can currently view the Downtown Fever Facebook page. Based upon this change to the status quo,[3] Emerald City filed a second application for injunctive relief, which requested, among other things, an order forcing Kahn to give Emerald City control over the Downtown Fever Facebook account. The second application was stricken but was replaced by an amended second application requesting the same. The district court transferred the matter to the magistrate judge, who held a hearing on the Application.

At the hearing, Emerald City's witness—a web designer who had designed Emerald City's website—testified that an Emerald City employee named Phillip Nestreda had created the Downtown Fever Facebook account and had given Jordan administrator access to the account. The witness testified that the Downtown Fever Facebook page was no longer viewable and

---

[3] Emerald City was previously blocked from controlling the Downtown Fever Facebook account whereas now the Facebook page has been "shut down" such that customers and potential customers can no longer access the page and may be under the impression that the Downtown Fever band has disbanded.

that Emerald City had been "locked out" of accessing the administrator functions for the page. At the conclusion of the evidence, the magistrate judge announced that Kahn would have to re-activate the Downtown Fever Facebook page so that it could be viewed and would have to transfer control of the Facebook page to Emerald City.

After the hearing, the magistrate judge issued its Report and Recommendation ("R&R"). The R&R recommended that the district court issue a preliminary injunction ordering Kahn to "transfer to Plaintiffs complete control of Downtown Fever's account on Facebook" and prohibit Kahn from "making any alterations to or accessing (for any purpose other than to transfer the control to Plaintiffs) Downtown Fever's Facebook account." The district court adopted the R&R in full and without further analysis, ordered Kahn to "transfer to Plaintiffs complete control of Downtown Fever's account on Facebook by providing Plaintiffs' counsel with the password and any other required materials to access and assume control of the account under an administrator status within five (5) days of the entry of this order" and enjoined Kahn "from making any alterations to or accessing (for any purpose other than to transfer the control of the administrator status to Plaintiffs) Downtown Fever's Facebook account."

Kahn appeals the order, arguing that Emerald City failed to carry its burden to show that each requirement for a preliminary injunction was satisfied. Specifically, Kahn argues that Emerald City never showed how they were likely to succeed on the merits for any of their claims—either in their Amended Second Application for injunctive relief or at the hearing—and the R&R and district court order also fail to discuss likelihood of success on the merits. Kahn points out that the district court, which adopted the R&R in full, based its decision to issue the preliminary injunction on the "Lanham Act,"

which requires a plaintiff to show "use in commerce" of a mark. Kahn argues that neither shutting down a Facebook page nor blocking Emerald City from administrator access to a Facebook page is "use" of a mark "in commerce." Kahn notes that the Downtown Fever Facebook page, because it is inactivated, cannot be viewed by anyone and thus Kahn's activity cannot constitute "use in commerce" of a mark.

## II.

We review a district court's grant of a preliminary injunction for abuse of discretion.[4] *Paulsson Geophysical Servs., Inc. v. Sigmar*, 529 F.3d 303, 306 (5th Cir. 2008). A preliminary injunction "is an extraordinary equitable remedy that may be granted *only if* the plaintiff establishes four elements: (1) a substantial likelihood of success on the merits; (2) a substantial threat that the movant will suffer irreparable injury if the injunction is denied; (3) that the threatened injury outweighs any damage that the injunction might cause the defendant; and (4) that the injunction will not disserve the public interest." *Brennan's, Inc. v. Brennan*, 289 F. App'x 706, 707 (5th Cir. 2008) (emphasis added) (citing *Speaks v. Kruse*, 445 F.3d 396, 399–400 (5th Cir. 2006)).

Here, we cannot find in any party filing, hearing transcript, or court filing an analysis of the four elements that must be satisfied before the "extraordinary remedy" of a preliminary injunction can be granted.[5] As Kahn notes, Emerald City nowhere in its Amended Second Application for injunctive

---

[4] "As to each element of the district court's preliminary-injunction analysis, the district court's findings of fact are subject to a clearly-erroneous standard of review, while conclusions of law are subject to [*de novo*] review and will be reversed if incorrect." *Sell v. Livingston*, 561 F. App'x 342, 343 (5th Cir. 2014) (quoting *Janvey v. Alguire*, 647 F.3d 585, 591–92 (5th Cir. 2011)).

[5] *See Petrello v. Nath*, 350 F. App'x 887, 890 (5th Cir. 2009) ("When granting a preliminary injunction, the district court . . . 'must . . . state the findings and conclusions that support its action.'" (citing Fed. R. Civ. P. 52(a)(2) and *Chandler v. City of Dallas*, 958 F.2d 85, 88–89 (5th Cir. 1992)).

relief, or at the hearing, tied Kahn's actions related to the Facebook account to any one of Emerald City's sixteen causes of action.

The R&R cites only to the standard for "Lanham Act liability," explaining that such liability requires a "showing that the defendant 'uses in commerce any word, term, name, symbol, or device.'"  Thereafter, the R&R states: "As noted at the hearing and in the Court's post-hearing order, . . . the Court finds that Plaintiffs have offered sufficient evidence regarding Defendants' control of Downtown Fever's Facebook account to warrant additional injunctive relief." The R&R reasons that because Kahn "has prevented Plaintiffs from accessing their Downtown Fever Facebook account and will not make the password available to them[,] . . . [s]uch . . . causes them irreparable harm in the Texas marketplace."

The implied conclusion in the R&R, and the basis upon which the preliminary injunction was granted, is that Kahn's Facebook-related actions establish Emerald City's likelihood of success on the merits for a Lanham Act claim.  Such a conclusion amounts to an abuse of discretion, for we agree with Kahn that neither shutting down a Facebook account nor blocking administrator access to a Facebook account constitutes "use in commerce" of a trademark.[6] *See Paulsson*, 529 F.3d at 306, 309.  As it is undisputed that the Facebook page is not accessible to anyone, Kahn's Facebook-related actions cannot be characterized as "use in commerce" of a trademark.[7]

---

[6] Emerald City argues that its claims for tortious interference with business relations and breach of fiduciary duty support the injunction.  That may be so, but it is of no account now because Emerald City failed to make any showing linking those claims to Kahn's Facebook-related actions prior to the issuance of the injunction.  As such, we agree with Kahn that Emerald City failed to satisfy its burden of proving that all four prerequisites for a preliminary injunction were satisfied.

[7] Moreover, upon review of the hearing transcript and post-hearing order referred to in the R&R, we find nothing in either to justify the preliminary injunction.  At the hearing, the only "findings" related to the Facebook activity consisted of the magistrate judge stating

No. 15-40446

## III.

Because the requirements for a preliminary injunction were not satisfied here, we VACATE the preliminary injunction.

---

that he was "troubled" and "concerned" by Kahn's shutting down and locking Emerald City out of the Facebook page and he believed those actions were "dirty pool."