FILED
United States Court of Appeals
Tenth Circuit

July 10, 2009

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

SARAH ELLENBERG,

        Plaintiff-Appellant,

v.

NEW MEXICO MILITARY
INSTITUTE, and the BOARD OF
REGENTS OF THE NEW MEXICO
MILITARY INSTITUTE,

        Defendants-Appellees.

No. 08-2112

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D.C. NO. CIV-04-347-PJK/DJS)**

Gail Stewart, Steven Granberg, P.A., Albuquerque, New Mexico, for Appellant.

John F. Kennedy, Cuddy & McCarthy, LLP, Santa Fe, New Mexico (Jacquelyn
Archuleta-Staehlin and Sarah Piltch, Cuddy, Kennedy, Ives, Archuleta-Staehlin,
Fairbanks & Vigil, Santa Fe, New Mexico, and Lee Rogers and Barbara M.
Smith-Duer, Atwood, Malone, Turner & Sabin, P.A., Roswell, New Mexico, with
him on the brief) for Appellees.

Before **TACHA**, **MURPHY**, and **TYMKOVICH**, Circuit Judges.

**TYMKOVICH**, Circuit Judge.

Sarah Ellenberg sued the New Mexico Military Institute and its Board of Regents (NMMI) on the ground that in denying her admission, NMMI violated three federal laws protecting persons with disabilities: (1) the Individuals with Disabilities Education Act (IDEA), (2) Section 504 of the Rehabilitation Act (Section 504), and (3) Title II of the Americans with Disabilities Act (ADA).

The district court held Ellenberg could not establish a prima facie discrimination claim under Section 504 and the ADA because she had not offered the required evidence of a disability that substantially limited a major life activity. Ellenberg argues the district court erred, and that her eligiblity for an individualized education program under the IDEA means she automatically satisfies the disability requirements of Section 504 and the ADA.

We conclude the district court correctly found the statutes have different requirements for establishing a disability, and that having an individualized education program under the IDEA does not automatically establish a disability under Section 504 and the ADA. Exercising jurisdiction under 28 U.S.C. § 1291, we accordingly AFFIRM.

## I. Background

We reviewed in detail the facts and procedural history in a prior appeal, *Ellenberg v. New Mexico Military Institute*, 478 F.3d 1262, 1271–73 (10th Cir. 2007), and only briefly summarize them here.

NMMI is a state educational institution in Roswell, New Mexico, offering college preparatory education in a military setting. In 2003, NMMI denied Ellenberg admission, citing behavioral problems manifested in her presence at a residential treatment facility, admitted past drug use, level of medication requirements, and need for continued counseling. At the time NMMI denied Ellenberg admission, she was eligible for special education services under the IDEA and had an individualized education program.[1] Ellenberg sued, arguing NMMI's admissions decision violated the IDEA, Section 504, and the ADA. The district court rejected the IDEA claim after finding NMMI had satisfied its IDEA obligations. The court further held that NMMI's compliance with the IDEA meant the Section 504 and ADA claims necessarily failed as well.

On appeal, we found Ellenberg had failed to exhaust her administrative remedies and the district court should not have addressed the merits of her IDEA claim. *Id.* at 1267. We remanded the case with instructions to dismiss this claim for lack of jurisdiction. *Id.* The Section 504 and ADA claims were not barred by

---

[1] The IDEA provides state and local agencies with federal money to ensure that children with disabilities have access to "free appropriate public education" that "meet[s] their unique needs and prepares them for employment and independent living." 20 U.S.C. § 1400(d). To this end, states receiving federal money must create an individualized education program for each disabled child, which includes specially-designed instruction and services that will allow the child to meet certain individualized objectives. § 1412(a)(4).

Ellenberg qualified under the IDEA on the basis of her Oppositional Defiance Disorder, which is recognized by the American Psychiatric Association. *Ellenberg*, 478 F.3d at 1272 n.8.

Ellenberg's failure to exhaust IDEA administrative remedies, though, so we remanded for their reconsideration. *Id.*

Upon remand, Ellenberg filed an amended complaint for damages and declaratory relief, reasserting her claims under Section 504 and the ADA. The parties filed cross-motions for summary judgment; the district court denied Ellenberg's motion but granted that of NMMI. The court did so after finding Ellenberg had failed to make a prima facie showing she was disabled under Section 504 and the ADA. R., Vol. I at 214–16 (Dist. Ct. Order); *see also Jarvis v. Potter*, 500 F.3d 1113, 1121 (10th Cir. 2007) (to establish a prima facie Section 504 claim, a plaintiff must show he or she is "disabled under [Section 504]"); *Davidson v. Am. Online, Inc.*, 337 F.3d 1179, 1188 (10th Cir. 2003) (to establish a prima facie ADA claim, a plaintiff must show he or she is "disabled within the meaning of the ADA"). Key to its holding was that Ellenberg's eligibility for special education services under the IDEA and her existing individualized education program did not automatically establish a prima facie showing of disability under Section 504 and the ADA.

Ellenberg now appeals the district court's order granting summary judgment to NMMI and its denial of her summary judgment cross-motion.

## II. Analysis

We review a grant of summary judgment de novo to determine whether any genuine issues of material fact are in dispute and, if not, whether the district court

-4-

correctly applied the substantive law. *Viernow v. Euripedes Dev. Corp.*, 157 F.3d 785, 792 (10th Cir. 1998).

Ellenberg makes three interrelated arguments: (1) her eligibility for receipt of special education and having an individualized education program under the IDEA make her, by definition, a disabled person protected under both Section 504 and the ADA; (2) her disability claims should be decided by a jury because certain disputed issues of fact exist; and (3) NMMI's facially discriminatory admissions standards violate Section 504 and the ADA.

As we explain below, Ellenberg's failure to offer evidence that her disability substantially impairs a major life activity is fatal to her prima facie case under Section 504 and the ADA. Because we can resolve the case on this first issue as a matter of law, we need not address the latter two arguments.

## A.  Discrimination Claims Under Section 504

To establish a prima facie case under Section 504, a plaintiff must first demonstrate he or she is an "otherwise qualified individual with a disability." *See* 29 U.S.C. § 794(a); *Hollonbeck v. U.S. Olympic Comm.*, 513 F.3d 1191, 1194 (10th Cir. 2008), *cert. denied,* 129 S. Ct. 114 (2008). The issue here is whether Ellenberg's IDEA eligibility by itself can satisfy this first element.

As an initial matter, NMMI argues we should not consider Ellenberg's argument on this point because she failed to present it below. We disagree. Ellenberg sufficiently raised the argument in her brief to the district court, and the

court addressed the argument in its order.  We therefore proceed to our analysis of the statute.

### 1.  Section 504 and its Interpretive Regulations

Section 504 does not precisely define eligibility under the Act.  That is done by the regulations implementing Section 504, which describe eligible disabled individuals as "qualified handicapped person[s]."  34 C.F.R. § 104.3(1)(2).  Relevant to our analysis, a "qualified handicapped person" is "a handicapped person" to whom "a state is required to provide a free appropriate public education under [the IDEA]."  § 104.3(1)(2)(iii).[2]  In turn, a related provision defines "handicapped person" as one who "has a physical or mental impairment which substantially limits one or more major life activities." § 104.3(j)(1).[3]  "[M]ajor life activities" include "functions such as caring for

_____

[2]  The regulation defines "qualified handicapped person" as:

[A] handicapped person (i) of an age during which nonhandicapped persons are provided such services, (ii) of any age during which it is mandatory under state law to provide such services to handicapped persons, or (iii) to whom a state is required to provide a free appropriate public education under [the IDEA].

34 C.F.R. § 104.3(1)(2).

[3]  The full text of § 104.3(j)(1) reads: "Handicapped persons means any person who (i) has a physical or mental impairment which substantially limits one or more major life activities, (ii) has a record of such an impairment, or (iii) is regarded as having such an impairment."

one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." § 104.3(j)(2)(ii).

Interpreting this basic regulatory framework, Ellenberg contends she fits within the definition of "qualified handicapped person." In her view, IDEA eligible individuals are listed among the "qualified handicapped persons" in § 104.3(1)(2); she is an IDEA eligible individual; therefore she is automatically a qualified handicapped person covered by Section 504. For several reasons, we disagree with this conclusion.

First and crucially, Ellenberg's interpretation fails to read the term "qualified handicapped person" from § 104.3(1)(2) in light of the nearby definition of "handicapped person" in § 104.3(j)(1). By focusing on § 104.3(1)(2)'s application of "qualified handicapped person," Ellenberg skips a very important step—i.e., determining whether she is a "handicapped person" in the first place.

In our view, to meet the definition of a "qualified handicapped person" under § 104.3(1)(2), one must first satisfy the definition of "handicapped person" under § 104.3(j)(1). In other words, a claimant must demonstrate an impairment that "substantially limits" a "major life activity." Focusing solely on § 104.3(1)(2), as Ellenberg would have us do, would render § 104.3(j)(1) superfluous. We cannot do this, and instead find that a "qualified handicapped

person" must first demonstrate a physical or mental impairment that substantially limits at least one major life activity.[4]

But Ellenberg's argument is not necessarily lost at this point. If IDEA eligibility and an individualized education program *always* and *necessarily* means a student has an impairment that "substantially limits" a "major life activity," Ellenberg would automatically satisfy § 104.3(j)(1)'s definition of "handicapped person." Here, Ellenberg could have pointed out (but did not) that § 104.3(j)(2)(ii) specifically identifies "learning" as a "major life activity." Her IDEA related disability, therefore, might satisfy the "major life activity" requirement in § 104.3(j)(1)'s definition of a handicapped person.

Still, Ellenberg would need to demonstrate her disability *substantially* limits the major life activity of learning. Doing so is important because "[n]ot every impairment that affects an individual's major life activities is a substantially limiting impairment." *Reeves v. Johnson Controls World Servs., Inc.*, 140 F.3d 144, 151 (2d Cir. 1998) (quoting *Knapp v. Nw. Univ.*, 101 F.3d 473, 481 (7th Cir. 1996)). Indeed, case law indicates claimants must advance *individualized* evidence that a limitation is substantial in the context of the major life activity as a whole. *See, e.g.*, *Lusk v. Ryder Integrated Logistics*, 238 F.3d 1237, 1240 (10th Cir. 2001); *McGuinness v. Univ. of N.M. Sch. of Med.*, 170 F.3d

---

[4] We note that the regulations implementing Section 504 could have listed IDEA eligible individuals as automatically included in the definition of "handicapped persons" in § 104.3(j)(1). They do not.

974, 978 (10th Cir. 1998); *see also Singh v. George Washington Univ. Sch. of Med. & Health Scis.*, 508 F.3d 1097, 1100–04 (D.C. Cir. 2007); *Waldrip v. Gen. Elec. Co.*, 325 F.3d 652, 656 (5th Cir. 2003).[5]

Here, as the district court noted, Ellenberg failed to put forward a specific argument of substantial limitation. Her failure to do so means we cannot know "whether the particular impairment constitutes a significant barrier for [this] *particular person*," *Knapp*, 101 F.3d at 481 (emphasis added), and thus whether she meets Section 504's disability requirements.

Nor does Ellenberg's mere receipt of an individualized education program under the IDEA by itself demonstrate a substantial limitation.[6] Unlike a "handicapped person" under § 104.3(j)(1), a disabled child under the IDEA need not be "substantially limit[ed]" in the major life activity of learning. The IDEA defines a disabled child as one "(i) with mental retardation, hearing . . . speech or language impairments, visual impairments . . . serious emotional disturbance . . . orthopedic impairments, autism, traumatic brain injury, other health impairments, or specific learning disabilities; and (ii) who, by reason thereof, needs special education and related services." 20 U.S.C. § 1401(3)(A). As NMMI and the

---

[5] The majority of cases cited in this paragraph arise in the ADA context. As described below, however, the Section 504 and ADA standards in this regard are the same.

[6] At summary judgment Ellenberg could have used her particular individualized education program to show specific evidence of substantial impairment, but did not.

district court point out, one may therefore qualify as "disabled" under the IDEA for purposes of that statute without demonstrating a "substantially limit[ing]" impairment.

The IDEA regulation listing the various eligible disabilities bolsters our view. Under 34 C.F.R. § 300.8, disabilities that merit an IDEA individualized education program range from the minimal to the serious. *E.g.*, § 300.8(c)(12) (traumatic brain injury); § 300.8(a)(1) (serious emotional disturbance); § 300.8(c)(3) (deafness); § 300.8(c)(10)(i) (imperfect ability to listen, dyslexia, minimal brain dysfunction); § 300.8(c)(4)(i)(C) ("[i]nappropriate types of behavior or feelings under normal circumstances"). Of course an IDEA disability may—and in the majority of cases probably will—substantially limit a major life activity. But the point here is that it need not, and thus a plaintiff must individually show substantial limitation.

We further note that while Section 504 and the IDEA both provide certain forms of relief for individuals with disabilities, they have separate purposes. Section 504 provides relief from discrimination, *see Se. Cmty. Coll. v. Davis*, 442 U.S. 397, 410 (1979), but the IDEA provides relief from inappropriate educational placement decisions, regardless of discrimination, *see Garcia v. Bd. of Educ. of Albuquerque Pub. Schs.*, 520 F.3d 1116, 1129 (10th Cir. 2008) (citing 20 U.S.C. § 1400(d)(1)(A)). "Concomitant to these distinct purposes are separate statutory definitions of what it means to be disabled or handicapped." *Bowers v.*

*Nat'l Collegiate Athletic Ass'n*, 563 F. Supp. 2d 508, 533 (D.N.J. 2008). These definitions may substantially overlap, but we decline to conflate them entirely.

Thus, eligibility for special education and having an individualized education program under the IDEA demonstrate a child's disability, but that disability is not *necessarily* one that "substantially limits" the major life activity of learning. As a matter of law, therefore, Ellenberg cannot rely on the IDEA alone to make her prima facie discrimination claim under Section 504. Instead, she must offer evidence and arguments from that evidence showing her disability is substantial in the context of the major life activity as a whole. She failed to do so here and the district court correctly granted summary judgment.

### 2. *Other Authority*

Notwithstanding this regulatory framework, Ellenberg points to several federal and state agency publications to support her contention that IDEA eligibility can itself establish prima facie claims under Section 504. We do not find these persuasive.

The first agency authority is a guidance manual provided by the United States Department of Education on its Internet website. In particular, Ellenberg cites to a portion of the manual reviewing "frequently asked questions" (FAQ) about Section 504. The guidance states that "a 'qualified student with a disability' [protected by Section 504] is a student with a disability . . . to whom a state is required to provide a free appropriate public education under [the

IDEA]."[7]  According to Ellenberg, this guidance demonstrates that "students with a disability under the IDEA are automatically protected from disability discrimination under Section 504."  Opening Br. at 13.

But in context, the guidance manual confirms our reading of 34 C.F.R. § 104's provisions.  In addition to the commentary Ellenberg cites, the Department of Education reiterates that Section 504 eligibility requires a "disability" that "substantially limits a major life activity," and that such determination "must be made on the basis of an individual inquiry."  FAQ 12. The commentary Ellenberg excerpts thus assumes an individual plaintiff already meets the definitional requirements of a "handicapped person" under § 104.3(j)(1)—something Ellenberg has failed to do.

The second agency authority Ellenberg cites is an electronic document from the New Mexico Public Education Department (NMPED).[8]  Like the Department of Education's web page, the NMPED document correctly notes that "[a] student is . . . entitled to a Section 504 Accommodation Plan if . . . the individual has a mental or physical impairment that substantially limits one or more major life

---

[7]  United States Department of Education, Protecting Students With Disabilities (2009), http://www.ed.gov/about/offices/list/ocr/504faq.html (question 13) (last visited June 11, 2009).

[8]  New Mexico Public Education Department, Educators and Administrators Implementing Section 504 of the Rehabilitation Act of 1973 (2007), http://www.ped.state.nm.us/RtI/dl09/Section504GuideComplete.pdf#pagemode=bookmarks (last visited June 11, 2009).

activities and it impacts the student's education." NMPED Doc. at 3. Later in the document, however, NMPED erroneously indicates that individuals qualifying under the IDEA "are also already considered to be qualified individuals under Section 504." *Id.* at 6.

The NMPED guidelines, like Ellenberg, conflate the definition of a "disabled" child under the IDEA with the definition of a "handicapped person" under Section 504. Obviously, most IDEA eligible individuals are also handicapped under Section 504, and Ellenberg may be as well. But again, we cannot impose an interpretation of Section 504 at odds with its implementing regulation requirement that a claimant first establish he or she is substantially limited in a major life activity.

Ellenberg also cites several cases to support her argument that IDEA eligibility automatically establishes the disability element of a prima facie claim under Section 504. But most of these cases only stand for the proposition—with which we agree—that Section 504 has a broader scope than the IDEA: while the IDEA focuses on the provision of appropriate public education to disabled children, Section 504 addresses the provision of state services to disabled individuals generally. *E.g.*, *Mark H. v. Lemanhieu*, 513 F.3d 922, 929 (9th Cir. 2008); *Weber v. Cranston Pub. Sch. Comm.*, 245 F. Supp. 2d 401, 405–07 (D.R.I. 2003); *but see M.H. v. Mont. High Sch. Ass'n*, 929 P.2d 239, 241 (Mont. 1996)

(finding that IDEA qualified students are automatically disabled under Section 504).

These cases do not persuade us that Section 504 necessarily means those with an individualized education program are disabled as a matter of law under Section 504. The unremarkable fact that Section 504 (insofar as it encompasses more *types of claims*) is broader than the IDEA does not change the fact that disability under Section 504 requires something IDEA claims do not—namely, evidence of a "substantial[] limit[ation on] one or more major life activities." 34 C.F.R. § 104.3(j)(1).

In contrast, our view accords with certain federal cases that have declined to find that IDEA eligibility automatically qualifies a person as handicapped under Section 504. As one court notes, the "separate statutory treatments of the terms 'disability' [in the IDEA] and 'handicapped' [in Section 504] make clear . . . [that] a special education student is not necessarily a 'qualified individual with a disability' under [Section 504]." *Bowers*, 563 F. Supp. 2d at 533 (citation omitted); *see also Dohmen ex rel. Dohmen v. Twin Rivers Pub. Sch.*, 207 F. Supp. 2d 972, 975 n.2 (D. Neb. 2002) ("A special education student is not necessarily a 'qualified individual with a disability'" under Section 504.).

These cases recognize the large practical overlap between IDEA eligible students and those handicapped students who may bring a claim under Section 504. "But the *likelihood* of overlap does not . . . mean that a student receiving

-14-

special education services under the IDEA is *per se* handicapped under [Section 504]," *Bowers*, 563 F. Supp. 2d at 533 (emphasis added), and does not relieve a plaintiff such as Ellenberg of the burden of proving a physical or mental impairment which substantially limits one or more major life activities. *Cf. Andrew M. v. Del. County Office of Mental Health & Mental Retardation*, 490 F.3d 337, 349 (3d Cir. 2007) (legislative history of Section 504 "does not indicate that a violation of the IDEA is a per se violation of [Section 504] . . . . [A] plaintiff must still prove that there was a violation of [Section 504]").

\* \* \*

In sum, Ellenberg has not demonstrated she falls within the meaning of a "handicapped person" for purposes of Section 504, and the district court correctly granted summary judgment in favor of NMMI.

## B. Discrimination Claims Under the ADA

Ellenberg also contends that eligibility for special education under the IDEA is sufficient to establish a prima facie discrimination case under the ADA as well.

To establish a prima facie case under the ADA, a plaintiff must first prove he or she "is a qualified individual with a disability." *Gohier v. Enright*, 186 F.3d 1216, 1219 (10th Cir. 1999). As with the Section 504 claim, the issue here is whether Ellenberg's IDEA eligibility is sufficient to establish this prima facie element.

To satisfy the ADA's definition of disability, a plaintiff must "(1) have a recognized impairment, (2) identify one or more appropriate *major life activities*, and (3) show the impairment *substantially limits* one or more of those activities." *Berry v. T-Mobile*, 490 F.3d 1211, 1216 (10th Cir. 2007) (emphases added) (citation omitted). Because the language of disability here mirrors that of Section 504, our analysis of Ellenberg's ADA claim is the same as it was for Section 504. *See Miller v. Bd. of Ed. of Albuquerque Pub. Schs.*, 565 F.3d 1232, 1245 (10th Cir. 2009) (Section 504 and the ADA involve the same substantive standards); *Cummings v. Norton*, 393 F.3d 1186, 1190 n.2 (10th Cir. 2005) (same).

Because Ellenberg failed to offer evidence showing how her disability substantially limited a major life activity, her attempt to establish a prima facie ADA claim fails as well.

### III. Conclusion

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment for NMMI. Because the district court correctly resolved this issue as a matter of law, we need not reach Ellenberg's other arguments.