14-3603-cv
*B.C., et al. v. Mount Vernon School District, et al.*

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

August Term 2015

(Argued: August 26, 2015        Decided: September 16, 2016)

No. 14-3603-cv

_____

B.C., INDIVIDUALLY AND ON BEHALF OF HER MINOR CHILD J.C.; T.H., INDIVIDUALLY
AND ON BEHALF OF HER MINOR CHILD T.H.
*Plaintiffs-Appellants*,

-v.-

MOUNT VERNON SCHOOL DISTRICT, ET AL.,
*Defendants-Appellees*.

_____

Before: WALKER, JACOBS, AND LIVINGSTON, *Circuit Judges*.

Appeal from the decision, signed April 17, 2012 and entered April 18, 2012, of the United States District Court for the Southern District of New York (Briccetti, *J.*) dismissing, as to the New York State Education Department and Roberto Reyes, Plaintiffs' Americans with Disabilities Act ("ADA") claims and claims under Section 504 of the Rehabilitation Act ("Section 504"), and the decision, signed August 27, 2014 and entered August 28, 2014, granting summary judgment with respect to Plaintiffs' ADA, Section 504, Individuals with Disabilities Education Act ("IDEA"), and 42 U.S.C. § 1983 ("Section 1983") claims

1

against Mount Vernon City School District, Mount Vernon City School District Board of Trustees, Dr. Welton Sawyer, and Shelly Jallow. For the reasons stated below and in the accompanying summary order, we **AFFIRM** the judgment of the district court.

MICHAEL H. SUSSMAN, Sussman & Watkins, Goshen, N.Y., *for Plaintiffs-Appellants*.

LEWIS R. SILVERMAN, Rutherford & Christie, LLP; New York, N.Y., *for Defendants-Appellees Mount Vernon City School District, Mount Vernon City School District Board of Trustees, Dr. Welton Sawyer, and Shelly Jallow.*

BARBARA D. UNDERWOOD, Solicitor General, STEVEN C. WU, Deputy Solicitor General, PHILIP V. TISNE, Assistant Solicitor General, *for* ERIC T. SCHNEIDERMAN, Attorney General of the State of New York; New York, N.Y., *for Defendants-Appellees New York State Education Department and Roberto Reyes.*

DEBRA ANN LIVINGSTON, *Circuit Judge*:

Plaintiffs-Appellants B.C. and T.H., individually and on behalf of their respective daughters J.C. and T.H. (collectively, "Plaintiffs"), brought this action in the United States District Court for the Southern District of New York (Bricetti, *J.*), asserting various claims against Defendants-Appellees the Mount Vernon School District; the District Board of Trustees; Dr. Welton Sawyer, the Superintendent of the District; Shelly Jallow, the Assistant Superintendent of Curriculum and Instruction of the District (collectively, "District Defendants");

2

the New York State Education Department ("NYSED") and Roberto Reyes, Title I, School and Community Services Director of the NYSED (collectively, "NYSED Defendants").

This opinion addresses one of Plaintiffs' claims: that the district court erred in concluding that Plaintiffs did not make a prima facie showing of discrimination against the District Defendants pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and Section 504 of the Rehabilitation Act ("Section 504"), 29 U.S.C. § 794 *et seq.*[1] Plaintiffs advance a disparate impact theory, relying on statistics showing that the District's academic intervention services ("AIS") — non-credit bearing courses intended for students at risk of not meeting state performance standards — were offered to children with a "disability" under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, at a greater rate than to children without such a disability. Because the ADA and Section 504 define "disability" differently than does the IDEA, Plaintiffs present a question of first impression in this Circuit: whether an individual with a "disability" under the IDEA categorically qualifies

---

[1] The district court also granted summary judgment to the District Defendants with respect to Plaintiffs' claim under 42 U.S.C. § 1983 insofar as it relied on alleged violations of the ADA and Section 504.

as an individual with a "disability" under the ADA and Section 504, such that Plaintiffs' data relating to "child[ren] with a disability" under the IDEA, 20 U.S.C. § 1401(3)(A), can establish a prima facie case with respect to a claim predicated on the plaintiff having a "disability" under the ADA, 42 U.S.C. § 12102(1), and Section 504, 29 U.S.C. § 705(20). We hold that it does not. A summary order filed simultaneously with this opinion addresses and rejects the balance of Plaintiffs' claims on appeal. For the reasons stated below and in the accompanying summary order, we **AFFIRM** the district court's judgment.

## BACKGROUND

### I. Factual Background

#### A.

J.C., daughter of Plaintiff-Appellant B.C, was classified as a child with a disability under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq*. Pursuant to that Act, J.C. had an individualized education program ("IEP") that set out certain guidelines for her public school instruction and specified the special education J.C. required. *See* 20 U.S.C. § 1401(14) (defining IEP); *see also id*. § 1414(d) (specifying IEP requirements). During the 2008–2009 school year, J.C. enrolled in the ninth grade at Mount Vernon High

4

School, which is part of the Mount Vernon City School District. Her schedule consisted of seven classes, two of which were "Math AIS 9" and "English 9 AIS." J.A. 327-28. J.C. had been designated to receive AIS based on scores from standardized tests that she took during the eighth grade. Due to their "remedial" nature, J.C.'s AIS courses were non-credit-bearing courses, meaning that they did not count towards the academic credits a student needed to advance to subsequent grades or to graduate. J.A. 349 at ¶ 14. The instruction in these courses took place in an integrated setting with both special education students and general education students.

To advance from the ninth grade to the tenth grade in the Mount Vernon City School District, a student needed six credits. Although J.C. passed all of her ninth grade courses, including her AIS courses, during her 2008–2009 school year, J.C. earned only four-and-a-half credits, reflecting the fact that her Math AIS and English AIS courses were non-credit-bearing courses. The following school year (2009–2010), J.C. transferred to Nellie A. Thornton High School, which is also part of the Mount Vernon City School District. When J.C.'s parent B.C. received J.C.'s class schedule at the beginning of the school year, she was "very much . . . surprise[d]" to discover that the schedule noted that J.C. was

5

enrolled in ninth grade because she had not earned sufficient credits during the 2008–2009 school year to be promoted to the tenth grade.[2] J.A. 135. J.C., meanwhile, was uncertain what grade she was in, "because one of [her] papers would say ninth grade and other papers would say tenth." J.A. 173.

At the start of the 2009–2010 school year, J.C. was enrolled in "English 10 AIS" and "Math AIS 10," among other courses. J.C.'s mother, however, insisted that J.C. be removed from the AIS courses and "placed immediately into additional credit bearing classes . . . to ensure that [J.C.] would amass enough credits that school year to qualify for the Eleventh Grade" the following year. J.A. 413. In August 2010, B.C.'s counsel sent a formal complaint to Defendant Roberto Reyes, an official at the NYSED. Reyes agreed to conduct an investigation into B.C.'s complaints about the District's AIS policy, promising to respond by October 15, 2010. According to B.C., however, no investigation occurred.

---

[2] According to her deposition testimony, B.C. first learned about AIS courses and their potential implications for her daughter's education in March 2009, the preceding spring. She was assured in meetings with school and district officials at that time that J.C. would be able to make up credits and graduate high school on time.

By the start of the 2010–2011 school year, J.C. had accrued sufficient credits to be classified as being in the eleventh grade. But in March 2011, J.C. left Nellie A. Thornton High School and transferred to The Karafin School, which is not within the Mount Vernon City School District. J.C. completed eleventh grade and twelfth grade at The Karafin School, graduating from The Karafin School in the spring of 2012.

**B.**

T.H., daughter of Plaintiff-Appellant T.H., was classified as a child with a disability under the IDEA. Pursuant to that Act, T.H. had an IEP that set out certain guidelines for her public school instruction and specified when T.H. should receive special education. During the 2008–2009 school year, T.H. enrolled in the ninth grade at Nellie A. Thornton High School, which is part of the Mount Vernon City School District. Her schedule, like J.C.'s, consisted of seven classes, two of which were Math AIS 9 and English 9 AIS. As with J.C.'s AIS courses, T.H.'s AIS courses were non-credit-bearing courses, and they took place "in an integrated environment with undifferentiated instruction." J.A. 21.

Although T.H. passed all of her ninth grade courses during the 2008–2009 school year, including her AIS courses, T.H. did not earn sufficient academic

7

credits to be promoted to the tenth grade because her AIS courses were non-credit-bearing courses. J.A. 39. Despite the fact that, based on credits earned, T.H. should have been classified as in the ninth grade, the school enrolled T.H. in the tenth grade for the 2009–2010 school year. T.H. continued receiving English AIS courses during the 2009–2010 school year.

By the 2010–2011 school year, T.H. had earned sufficient credits to be classified as a tenth grader but not as an eleventh grader. T.H. did not take any AIS courses during the 2010–2011 school year. By the 2011–2012 school year, T.H. had earned sufficient credits to be classified as a twelfth grader. T.H. did not take any AIS courses during the 2011–2012 school year. In the spring of 2012, T.H. graduated from Nellie A. Thornton High School.

## II. Procedural Background

On July 14, 2011, B.C. and T.H., individually and on behalf of their daughters, filed suit. Plaintiffs asserted various claims against the District Defendants and the NYSED Defendants under the ADA, Section 504, the IDEA, and 42 U.S.C. § 1983. As pertinent here, the Plaintiffs alleged that the District Defendants violated the ADA and Section 504, and, in so doing, Section 1983,

because the District's policy of scheduling AIS courses during school hours disparately impacted students with disabilities.

On January 16, 2014, the District Defendants moved for summary judgment. In a decision signed on August 27, 2014 and entered on August 28, 2014, the district court (Briccetti, *J*.) granted District Defendants' motion for summary judgment. *B.C. v. Mount Vernon City Sch. Dist.*, No. 11 CV 1411 VB, 2014 WL 4468082, at *1 (S.D.N.Y. Aug. 28, 2014). As to Plaintiffs' ADA and Section 504 claims, the court stated that the IDEA exhaustion requirement applied because Plaintiffs' claims were related to the provision of special education to J.C. and T.H. under the IDEA. *Id*. at *5-*6. The court concluded, however, that Plaintiffs' ADA and Section 504 claims were excused from the IDEA exhaustion requirement, as these claims challenged a "district-wide policy of discrimination," *id*. (quoting *Cave v. E. Meadow Union Free Sch. Dist.*, 514 F.3d 240, 250 (2d Cir. 2008)), and exhausting administrative remedies with respect to the District's "framework and procedures" would have been futile, *id*. (quoting *J.S. ex rel. N.S. v. Attica Cent. Schs.*, 386 F.3d 107, 114 (2d Cir. 2004)).

On the merits, the court rejected Plaintiffs' claim that the District's policy of scheduling AIS courses during school hours, rather than outside of school

9

hours, disparately impacted children with a "disability" under the ADA and Section 504. *See id*. at *6-*9. In support of their disparate impact claim of discrimination, Plaintiffs had offered evidence showing that the District's AIS policy affected children with a "disability" under the IDEA at a higher percentage than it affected children without such disability. *Id*. at *7. This evidence, the court reasoned, at most showed that the District's AIS policy disparately impacted children with a "disability" under the IDEA. *Id*. at *7-*8. It did not, however, show that the District's AIS policy disparately impacted individuals with a "disability" under the ADA and Section 504, since the definition of "disability" is different under the IDEA than under the ADA and Section 504. *Id*. at *8. The court therefore deemed the evidence insufficient to support a prima facie claim of disparate impact discrimination under the ADA and Section 504. *Id*. at *9. Because Plaintiffs failed to state a prima facie claim of discrimination under the ADA and Section 504, the court also granted summary judgment to the District Defendants on Plaintiffs' Section 1983 claims, to the extent that such claims were based on alleged violations of the ADA and Section 504. *Id.*

This Court "review[s] *de novo* a district court's grant or denial of summary judgment." *Mullins v. City of New York*, 653 F.3d 104, 113 (2d Cir. 2011) (internal quotation marks omitted). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant may . . . point[] to an absence of evidence to support an essential element of the nonmoving party's claim." *Gummo v. Village of Depew*, 75 F.3d 98, 107 (2d Cir. 1996). We "constru[e] the evidence in the light most favorable to the non-moving party," in reviewing the district court's determination to grant the motion, which is proper only when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Silverman v. Teamsters Local 210 Affiliated Health & Ins. Fund*, 761 F.3d 277, 284 (2d Cir. 2014) (quoting Fed. R. Civ. P. 56(a)).

The ADA and Section 504 both protect "qualified individual[s] with a disability." 42 U.S.C. § 12132 (ADA); 29 U.S.C. § 794(a) (Section 504). Under the

---

[3] The District Defendants do not challenge the district court's determination that exhaustion of Plaintiffs' ADA and Section 504 claims would have been futile, excepting them from the exhaustion requirement. *See id*. at *5-*6. Because the IDEA's exhaustion requirement is jurisdictional, *see Cave*, 514 F.3d at 245, we address this issue on appeal and conclude that the district court was correct that Plaintiffs' ADA and Section 504 claims fall within the "futility" exception because they challenge a "district-wide policy." *Mt. Vernon*, 2014 WL 4468082, at *6 (quoting *Cave*, 514 F.3d at 250).

ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Likewise, under Section 504, "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). "Because the standards adopted by the two statutes are nearly identical, we consider the merits of these claims together." *McElwee v. Cnty. of Orange*, 700 F.3d 635, 640 (2d Cir. 2012).

To establish a prima facie case of discrimination under either the ADA or Section 504, a plaintiff must show the following: (1) plaintiff is a "qualified individual with a disability;" (2) plaintiff was "excluded from participation in a public entity's services, programs or activities or was otherwise discriminated against by [the] public entity;" and (3) "such exclusion or discrimination was due to [plaintiff's] disability." *Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009) (quoting *Hargrave v. Vt.*, 340 F.3d 27, 34-35 (2d Cir. 2003)). Exclusion or discrimination

12

may take the form of disparate treatment, disparate impact, or failure to make a reasonable accommodation. *Id*. To establish a prima facie case under a disparate impact theory, plaintiff must demonstrate "(1) the occurrence of certain outwardly neutral practices, and (2) a significantly adverse or disproportionate impact on persons of a particular type produced by the defendant's facially neutral acts or practices." *Tsombanidis v. W. Haven Fire Dep't*, 352 F.3d 565, 574-75 (2d Cir. 2003) (emphasis omitted). Thus, "plaintiffs are ordinarily required to include statistical evidence to show disparity in outcome between groups." *Id.* at 575. This can be done by offering evidence showing that a neutral policy adversely affects a much greater percentage of people with a disability than it affects people without a disability. *See id.* at 577.

Here, plaintiffs seek to establish their prima facie disparate impact claim by comparing (1) the percentage rate at which high school students classified as having a "disability" under the IDEA receive AIS courses to (2) the percentage rate at which high school students not classified as having such a disability receive AIS courses. During the 2008–2009 school year in the Mount Vernon City School District, high school students who were classified as having a "disability" under the IDEA (i.e., special education students) took AIS courses at a rate that

13

was almost three times the rate at which high school students not classified as having a disability received AIS instruction. Approximately 23.02% of high school students receiving special education support took AIS classes, as compared to 8.62% of the rest of the student body. During the 2009–2010 school year in the Mount Vernon City School District, high school students receiving special education support were enrolled in AIS courses at a rate that was more than one-and-a-half times the rate at which the general high school student body received AIS instruction. In that year, approximately 20.37% of the special education high school students took AIS courses, as opposed to the 12.56% of the general high school population enrolled in these classes.

Plaintiffs do not rely upon and have not placed into the record any particularized evidence to show that individual students included in their data who are classified as having a "disability" pursuant to the IDEA also satisfy the ADA and Section 504 "disability" definitions. Nor have they identified any generalized evidence tending to establish this point. Plaintiffs' statistical evidence, therefore, shows disparate impact under the ADA and Section 504 only if, as a matter of law, a child with a disability under the IDEA necessarily qualifies as an individual with a disability under the ADA and Section 504, such

14

that Plaintiffs' data on children with a disability under the IDEA suffice as data on individuals with a disability under the ADA and Section 504. We conclude that this is not the case.

*    *    *

We begin with the statutory text. The ADA and Section 504 define the term "disability" differently than the IDEA does. The ADA defines "disability" as a "physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A). Section 504 expressly incorporates, with certain qualifications not applicable here, the ADA's definition.[4] 29 U.S.C. § 705(20)(B). By contrast, under the IDEA, a "child with a disability" has one or more of an enumerated list of impairments requiring "special education or related services." 20 U.S.C. § 1401(3).[5]

---

[4] In the following discussion, this opinion refers to the ADA as shorthand in characterizing the law under both the ADA and Section 504, given these statutes' identical definition of "disability."

[5] Subsection (A) of the definition — the subsection relevant to the high school students at issue in this case — enumerates the following impairments: "intellectual disabilities, hearing impairments (including deafness), speech or language impairments, visual impairments (including blindness), serious emotional disturbance . . . , orthopedic impairments, autism, traumatic brain injury, other health impairments, or specific learning disabilities." 20 U.S.C. § 1401(3)(A).

These are distinct legal standards. Although both define "disability" by reference to the effects of an individual's impairment, the statutes provide for different inquiries. The ADA asks whether an impairment "substantially limits" a major life activity, 42 U.S.C. § 12102(1)(A), while the IDEA trains on whether an impairment necessitates "special education and related services." 20 U.S.C. § 1401(3)(A). Thus, a child might "need[] special education and related services" by reason of an impairment, *id.*, even if that impairment does not "substantially limit[] . . . [a] major life activit[y]," 42 U.S.C. § 12102(1)(A).[6] As the Tenth Circuit concluded, "one may . . . qualify as 'disabled' under the IDEA for purposes of that statute without demonstrating a 'substantially limit[ing]' impairment." *Ellenberg v. N.M. Military Inst.*, 572 F.3d 815, 821 (10th Cir. 2009).

Although many, if not most, IDEA-eligible individuals may "also [be] handicapped under [the ADA]," *id.* at 823, we agree with the Tenth Circuit that Plaintiffs' approach reads the ADA's substantial limitation requirement, which we have consistently enforced, out of that statute, *cf. TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) ("It is our duty 'to give effect, if possible, to every clause and word of a statute'" (quoting *United States v. Menasche*, 348 U.S. 528, 538-39

---

[6] The ADA defines "major life activities" as, *inter alia*, "learning, reading, concentrating, thinking, communicating, and working." *Id.* § 12102(2)(A).

16

(1955))). Mindful that "[n]ot every impairment that affects an individual's major life activities is a *substantially* limiting impairment," *Reeves v. Johnson Controls World Servs., Inc.*, 140 F.3d 144, 151 (2d Cir. 1998) (emphasis added) (quoting *Knapp v. Nw. Univ.*, 101 F.3d 473, 481 (7th Cir. 1996)), "in assessing whether a plaintiff has a disability, [we] have been careful to distinguish impairments which merely *affect* major life activities from those that *substantially limit* those activities," *Ryan v. Grae & Rybicki, P.C.*, 135 F.3d 867, 870 (2d Cir. 1998) ("Although almost every impairment may, of course, in some way affect a major life activity, the ADA clearly does not consider every impaired person to be disabled."). A plaintiff seeking redress under the ADA must "show that any limitations are in fact substantial, not amounting to only a mere difference in conditions, manner, or duration." *Bartlett v. N. Y. State Bd. of Law Exam'rs*, 226 F.3d 69, 80 (2d Cir. 1998) (quotation marks omitted).

We have taken care to distinguish between "substantially overlap[ping]" definitions in a similar context. *Ellenberg*, 572 F.3d at 822. In *Rodriguez v. Village Green Realty, Inc.*, the plaintiff, whose child had a "disability" within the meaning of the IDEA, alleged discrimination under the Fair Housing Act ("FHA"). 788 F.3d 31, 44 (2d Cir. 2015). The FHA prohibits discrimination on the basis of

17

"handicap," 42 U.S.C. § 3604(f), defined as "a physical or mental impairment which substantially limits one or more . . . major life activities." *Id*. § 3602(h)(1).[7] Although we concluded that evidence pertaining to, *inter alia*, the "nature of [the child's] specific [special education] services" created a triable question of fact as to whether the plaintiff had a disability under the FHA, we stated that "the receipt of special education services is not, by itself, determinative as to whether a child qualifies as disabled [under the FHA]." 788 F.3d at 44. We reasoned that "[a] child receiving services under the IDEA 'need not be substantially limited in the major life activity of learning,' so 'one may therefore qualify as disabled under the IDEA for purposes of that statute without demonstrating a substantially limiting impairment.'" *Id*. (quoting *Ellenberg*, 572 F.3d at 821).

[7] Prior to 2008, the ADA and FHA's definitions of the terms "disability" and "handicap," respectively, were identical. *See Rodriguez*, 788 F.3d at 40 n.10. The ADA Amendments Act of 2008 ("ADAAA"), while leaving untouched the general definition of "disability"—"a physical or mental impairment that substantially limits one or more major life activities"—did flesh out the previously undefined term "major life activities." Pub. L. 110-325, § 4(a), 122 Stat. 3553, 3555 (codified at 42 U.S.C. § 12102(2)(A)) ("[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working."). The FHA has not been similarly amended. Nevertheless, the ADAAA does not affect the basic logic of our observation in *Rodriguez* that an individual eligible for the IDEA will not invariably also qualify for FHA protections, due to the different definitions of "disability" and "handicap" in those statutes.

*Rodriguez* thus supports our holding that the ADA and IDEA set forth distinct legal standards in their definitions of "disability," such that an individual will not qualify for the ADA's protections simply by virtue of his or her disabled status under the IDEA.[8]

This reading is consistent with the statutory schemes at issue. The ADA and IDEA, while both providing relief for persons with disabilities, serve distinct ambitions in different ways.[9] The ADA sweeps broadly, seeking to curb discrimination "against disabled individuals in major areas of public life," such as employment, public services, public accommodations, and education, *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 675 (2001); *see also* 42 U.S.C. § 12101, while the

---

[8] Our sister circuits have reached the same conclusion. *See Ellenberg*, 572 F.3d at 820-22, 824 ("Of course an IDEA disability may—and in the majority of cases probably will—substantially limit a major life activity. But the point here is that it need not, and thus a plaintiff must individually show substantial limitation [to state a claim under the ADA or Section 504]."); *Mann v. La. High Sch. Athletic Ass'n*, 535 F. App'x 405, 411 (5th Cir. 2013) ("The ADA definition of disability is more stringent because it requires a plaintiff to prove that his or her impairment substantially limits a major life activity, which is an inquiry entirely absent from the IDEA definition."); *see also Bowers v. Nat'l Collegiate Athletic Ass'n*, 563 F. Supp. 2d 508, 533 (D.N.J. 2008) (reaching the same conclusion).

[9] Section 504 operates similarly to the ADA, prohibiting discrimination on the basis of disability in programs receiving federal financial support. 29 U.S.C. § 794(a). As in the ADA, the "substantial limitation" requirement serves to focus the statute's application.

19

IDEA trains more narrowly on public education to ensure the provision of special education benefits to qualifying individuals, *see* 20 U.S.C. § 1400. Disability is defined generically in the ADA, 42 U.S.C. § 12102(1), with the substantiality requirement then serving to focus the statute on the class of persons Congress aimed to protect — those who, by virtue of their disability, may experience discrimination impairing their "right to fully participate in all aspects of society," *id*. § 12101(a)(1).[10] The IDEA, for its part, focuses on ensuring that special education and related services are provided to persons who might benefit by virtue of a mental or physical impairment. *See* 20 U.S.C. § 1400. The IDEA asks only whether a child "needs" special education and related services because of a particular impairment. *Id.* § 1401(3)(A)(ii). This straightforward test thus advances the ameliorative statutory aim of "[i]mproving educational results

---

[10] We note that the ADAAA rejected the Supreme Court's construction of "substantial[]" as requiring a "severe" or "significant" limitation, *see id*. § 12102(4)(B) ("The term 'substantially limits' shall be interpreted consistently with the findings and purposes of the [ADAAA]."); Pub. L. 110-325, § 2(b)(4), 122 Stat. 3553, 3554 ("The purpose[] of this Act [is *inter alia*] to reject the standards enunciated by the Supreme Court in *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184 (2002)."). Congress, however, retained the term "substantially limits" in this amendment, while instructing that "the definition of disability . . . shall be construed in favor of broad coverage . . . , *to the maximum extent permitted by the terms of this chapter*," 42 U.S.C. § 12102(4)(A) (emphasis added).

for children with disabilities," regardless of how acute those disabilities might be. *Id*. § 1400(c)(1).

For these reasons, an IDEA disability is not equivalent to a disability as cognizable under the ADA and Section 504. Plaintiffs, therefore, cannot rely solely on "receipt of special education" to establish an ADA or Section 504 disability. *Ellenberg*, 572 F.3d at 819. Those seeking relief pursuant to ADA or Section 504 must come forward with "additional evidence" — beyond simply their eligibility for IDEA coverage — showing their eligibility for the remedies afforded by the ADA and Section 504. *Rodriguez*, 788 F.3d at 45. Under a statistics-based disparate impact theory, this means that a plaintiff may not rely solely on statistics concerning individuals "disabled" within the meaning of the IDEA to establish a prima facie claim under the ADA or Section 504.

\* \* \*

Here, Plaintiffs' disparate impact claim relies exclusively on data concerning students with disabilities under the IDEA. Aside from their receipt of special education services, the record is devoid of any evidence as to whether the students included in the data qualify as disabled under the ADA or Section 504. Because, as a matter of law, an IDEA disability does not necessarily constitute a

21

disability under the ADA or Section 504, Plaintiffs' data do not establish "a significantly adverse or disproportionate impact on persons of a particular type produced by the defendant's facially neutral acts or practices." *Tsombanidis*, 352 F.3d at 575. Plaintiffs have therefore failed to make their prima facie showing that District Defendants' AIS policy adversely impacted individuals protected by the ADA and Section 504. Because Plaintiffs "fail[ed] to make a showing sufficient to establish the existence of an element essential to [their] case, and on which [they] will bear the burden of proof at trial," *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986), the district court properly entered summary judgment in favor of District Defendants as to Plaintiffs' ADA and Section 504 claims. Likewise, because Plaintiffs failed to make their prima facie showing under the ADA and Section 504, the district court properly entered summary judgment on their derivative Section 1983 claim against the District Defendants.

For the foregoing reasons and for the reasons stated in the accompanying summary order, we **AFFIRM** the district court's judgment.